# EXHIBIT A



January 2023

# RLS Universal
# Co-Brokerage Agreement
# Rules and Regulations

# RLS
## AT REBNY

## ACKNOWLEDGEMENT OF RLS UNIVERSAL CO-BROKERAGE AGREEMENT/RULES AND REGULATIONS

**Name of Firm:** _____

**Address:** _____

**Telephone:** (_____) _____  **Fax:** (_____) _____

**E-Mail Address:** _____

**Broker A Member:** _____

**Policy Contact:** _____ **Email** _____

**Listing Support Admin:** _____ **Email** _____

**Technical Contact:** _____ **Email** _____

**Listing Technology Provider:**  BrokersNYC___   LeadKit___   OLR___   Perchwell___

RealPlus___   RealtyMX___   RESoft___   Chime___

The undersigned represents that it: (i) is a duly licensed real estate broker under the laws of the State of New York; (ii) has received a copy of the RLS Universal Co-Brokerage Agreement/Rules and Regulations; and (iii) the execution of this acknowledgement has been duly authorized.

On behalf of my firm,_____, and all of its real estate brokers, associate real estate brokers and salespersons, we agree to abide by the terms and conditions set forth in the RLS Universal Co-Brokerage Agreement/Rules and Regulations.

Dated: _____

_____
(Name of Residential Member of REBNY)

By: _____

Name: _____

Title: _____

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ..........................................................................................................................1

DEFINITIONS ............................................................................................................................1

ARTICLE I.        LISTING PROCEDURES..............................................................................3

Section 1.        Who Can Participate in the RLS .............................................................3

Section 2.        Membership in REBNY.............................................................................4

Section 3.        Notification of Missed Payments for Participants that are Not RBD Members ....................................................................................................5

Section 4.        Types of Listings on the RLS ...................................................................5

Section 5.        Obligation to Distribute and Timing for Distribution of Exclusive Listings ........................................................................................................5

Section 6.        Changes to Exclusive Listings..................................................................6

Section 7.        Closing Price.............................................................................................6

Section 8.        Availability for Appointments...................................................................6

Section 9.        Withdrawal of Exclusive Listings.............................................................6

Section 10.       Co-Brokerage Terms for New Developments ...........................................6

Section 11.       Days On Market Calculation ....................................................................7

Section 12.       Removal of Listings—Suspended, Expelled or Resigning Participant .......7

Section 13.       Removal of Listings—Expired/Released Listing .....................................7

Section 14.       Removal of Listings—Failure to Abide by RLS Listings Data Compliance Policy ........................................................................................................8

Section 15.       Auction Listings........................................................................................8

Section 16.       Coming Soon.............................................................................................8

ARTICLE II.       SELLING/LEASING PROCEDURES ...........................................................9

Section 1.        Appointments............................................................................................9

Section 2.        Inducing Cancellation of Appointments ...................................................9

Section 3.        Back-up Brokers .......................................................................................9

Section 4.        Prior Visits by Buyers...............................................................................9

Section 5.        Buyer's/Tenant's Right to be Represented..............................................10

Section 6.        Recording of Names ...............................................................................10

Section 7.        Communications with Owners.................................................................10

Section 8.        Negotiations with an Owner/Buyer .........................................................10

Section 9.        Board Packages.......................................................................................10

| | | |
|---|---|---|
| Section 10. | Lease Applications | 11 |
| Section 11. | Disclosure Procedures Among Participants when there are Multiple Bids | 11 |
| Section 12. | Public Open Houses | 11 |
| Section 13. | Termination of an Exclusive Listing | 11 |
| Section 14. | Cooperative Co-Exclusive Listing | 11 |
| Section 15. | Disclosures to Tenants | 12 |
| ARTICLE III. | PROHIBITIONS | 12 |
| Section 1. | Unauthorized Use of Listing Information | 12 |
| Section 2. | Prohibited Promotional Activities | 12 |
| Section 3. | Solicitation of Exclusive Listings | 13 |
| Section 4. | Inaccurate Listing Information | 14 |
| ARTICLE IV. | COMPENSATION | 14 |
| Section 1. | Commissions | 14 |
| Section 2. | Changes in Commissions After Dissemination Over the RLS | 15 |
| Section 3. | Referral Fees | 15 |
| Section 4. | REBNY Does Not Establish Commission Rates | 15 |
| Section 5. | Costs | 16 |
| Section 6. | Commission Checks and Rent Deposit Checks | 15 |
| Section 7. | Participant Interest in the Exclusive Property | 15 |
| Section 8. | Acquisition of Interest in Exclusive Property | 16 |
| ARTICLE V. | FEES AND CHARGES | 16 |
| Section 1. | Establishment of Fees | 16 |
| Section 2. | Failure to Pay Fees | 16 |
| ARTICLE VI. | ENFORCEMENT OF RULES | 16 |
| Section 1. | Complaints Generally | 17 |
| Section 2. | Complaints Against a Licensed Real Estate Broker, Associate Real Estate Broker, Real Estate Salesperson | 17 |
| Section 3. | Complaints Against an RBD Member Firm | 18 |
| Section 4. | Complaints by RLS Staff | 18 |
| Section 5. | Violations of Board Code of Ethics | 18 |
| Section 6. | Violations of these Rules and Regulations/RLS Listings Data Compliance Policy | 18 |
| ARTICLE VII. | ARBITRATION | 19 |
| Section 1. | Mandatory Arbitration of Disputes | 19 |

ARTICLE VIII.   CONFIDENTIALITY OF RLS INFORMATION .......................................20

    Section 1.          Confidentiality of RLS Information ........................................19

    Section 2.          Use and Protection of RLS Information ................................20

    Section 3.          Provision of RLS Information to Buyers and/or Owners .........................20

    Section 4.          No Reproduction of RLS Information ....................................20

ARTICLE IX.    AMENDMENTS ..........................................................................21

    Section 1.          Amendment of Rules and Regulations ...................................21

ARTICLE X.    OWNERSHIP ..............................................................................21

    Section 1.          Ownership of Exclusive Listings..........................................21

    Section 2.          Ownership of RLS Compilations..........................................21

ARTICLE XI.    Penalties for Violations of Rules and Regulations ........................................21

    Section 1.          Penalties ...............................................................................21

    Section 2.          Notice of Penalties ..............................................................23

    Section 3.          Appeal of Suspension or Expulsion from the RLS...................................23

ARTICLE XII.    INDEMNIFICATION .................................................................23

    Section 1.          No Representation or Warranty .............................................23

    Section 2.          Extent of Liability of Exclusive Broker................................23

    Section 3.          Indemnification by Co-Broker...............................................23

EXHIBIT A    MANDATORY INFORMATION TO BE CONTAINED IN EXCLUSIVE LISTINGS TO BE TRANSMITTED OVER THE RLS

EXHIBIT B    DRAFT RLS OWNER OPT-OUT FORM

EXHIBIT C    RLS LISTINGS DATA COMPLIANCE POLICY

EXHIBIT D    REBNY UNIVERSAL NEW DEVELOPMENT BROKERAGE AGREEMENT

EXHIBIT E    RLS CHANGE OF NEW DEVELOPMENT BROKERAGE/SALES OFFICE FORM

EXHIBIT F    RLS APPEALS PROCESS

EXHIBIT G    COMING SOON OWNER AUTHORIZATION

## INTRODUCTION

The Residential Brokerage Division ("RBD") of The Real Estate Board of New York ("REBNY") has approved the promulgation of these rules regarding the sharing of Exclusive Listings (as defined below) for the purpose of offering or accepting cooperation and compensation among firms actively providing real estate brokerage services in New York City. The RBD has resolved that all firms that are members of the RBD must participate in the REBNY Listing Service ("RLS"), and any other properly licensed real estate brokerage firms that are not members of the RBD that offer or accept cooperation and compensation to and from members of the RBD or may have real estate listings in the New York City area may participate in the RLS.

This Universal Co-Brokerage Agreement/Rules and Regulations ("Rules and Regulations") is incorporated in the Applicant Agreement and forms a binding legal agreement between REBNY and the RLS, on the one hand, and the applicant, on the other. Additionally, all RBD Member firms, any other firms participating in the RLS, and their affiliated real estate brokers, associate real estate brokers or real estate salespersons (as those terms are defined in New York Real Property Law § 440) shall abide by these Rules and Regulations, and the penalties set forth herein. A list of all firms participating in the RLS can be found on the REBNY website, www.rebny.com. Unless otherwise indicated, all amendments to these Rules and Regulations shall be incorporated into this document by January 1 of the following year, and will not require further execution of new Acknowledgements or Applicant Agreements. The individual set forth as the contact person for each firm on the Acknowledgement or Applicant Agreement shall receive notice of any changes to these Rules and Regulations either by e-mail or regular mail. It is up to each firm to ensure that REBNY has the most current contact information.

The RLS is intended solely for use by Participants, as defined herein, in good standing, and only in connection with the sale and/or lease of residential property. Rules governing the use of the RLS in connection with the sale or lease of Exclusive Property are outlined below. Use of the RLS is conditioned on agreement and compliance with these Rules and Regulations, and payment of all applicable fees and dues.

**Use of the RLS in connection with Virtual Office Websites ("VOW"), or any other non-brokerage use, shall be implemented upon the receipt of a request to receive listing information from the RLS, and the execution of any applicable agreement with the RLS.**

## DEFINITIONS

As used in these Rules and Regulations, the following capitalized terms will have the respective meanings:

A.   "Advertise" shall mean to promote and/or publish information with respect to licensed real estate activity, including but not limited to information seeking to induce one or more third parties to participate in a transaction involving real property.

B.     "Advertising" shall have the same meaning as set forth in 19 N.Y.C.R.R. § 175.25.

C.     "Buyer" shall mean any person who is interested in purchasing an Exclusive Property.

D.     "Closing Price" shall mean the price at which the transaction for the Exclusive Property closed.

E.     "Co-Broker" shall mean any Participant representing a Buyer or Tenant, as applicable, with whom the Co-Broker has authorized an agency relationship involving the provision of real estate brokerage services.

F.     "Coming Soon" A "Coming Soon" designation may be utilized for an Exclusive Property (other than New Development Units and/or rentals) for which the Exclusive Broker and the Owner agree will require time for preparation prior to the marketing and showing of the Exclusive Property. The "Coming Soon" status is not intended to give the Exclusive Broker any unfair advantage in finding a buyer for the Exclusive Property or used to circumvent the rules and regulations set forth in the UCBA. The "Coming Soon" status is intended to provide a vehicle for RLS Participants to notify other Participants of Exclusive Properties that will be made fully available for showing and marketing after preparations have been completed.

G.     "Exclusive Agent" shall mean the real estate broker, associate real estate broker or real estate salesperson (as those terms are defined in New York Real Property Law § 440) affiliated with the Exclusive Broker, who has been appointed as the exclusive or co-exclusive sales or rental agent for an Exclusive Property.

H.     "Exclusive Broker" shall mean a member of the RBD, or other Participant in the RLS, who has been appointed in writing the exclusive or co-exclusive sales or rental agent of residential property by the Owner of such residential property, such as a Seller or Landlord.

I.     "Exclusive Listing" shall mean a written agreement setting forth the terms and conditions by which the Owner of residential property has appointed the Exclusive Broker, including any subsequent amendments thereto. Exclusive Listing includes both the exclusive right to sell or rent, and exclusive agency listing agreements. Unless otherwise specified, the definition of Exclusive Listing shall also include Co-Exclusive Listing.

J.     "Exclusive Property" shall mean the residential property that is subject to an Exclusive Listing and which is listed in the RLS.

K.     "Landlord" shall mean the Owner of an Exclusive Property that is available for rent by a Tenant.

L.     "Listing Information" shall mean details or information related to the Exclusive Property, including, but not limited to, the information contained in Exhibit A to these Rules and Regulations.

M.     "New Development Unit" shall mean an Exclusive Property offered for sale and co-brokered on the RLS that is subject to an offering plan and/or offered directly by a sponsor and is also subject to the REBNY Universal New Development Brokerage Agreement. For the avoidance of doubt, any re-sale of a property in a building that still

has other New Development Units shall be governed by these Rules and Regulations, and not by the REBNY Universal New Development Brokerage Agreement.

N.   "New York City" shall mean the five boroughs of New York City: the Bronx, Brooklyn, Manhattan, Queens, and Staten Island.

O.   "Open Listing" shall mean any listing for a property in which an Owner has not contracted with an Exclusive Broker either through an exclusive right to sell or exclusive agency listing agreement.

P.   "Ours Alone Listing" shall mean any oral or verbal listing arrangement that an Exclusive Broker may have entered into with an Owner relating to a sale or rental property.

Q.   "Owner" shall refer either individually or collectively, as applicable, to both a Seller and/or a Landlord.

R.   "Participant" shall mean a licensed real estate broker, associate real estate broker, real estate salesperson (as those terms are defined in New York Real Property Law § 440) associated with any firm who (a) is a member in good standing of the RBD, or (b) has an office and/or listings in New York City, or is a firm that actively endeavors during the operation of its real estate brokerage business to list residential property of the type listed on the RLS and/or to accept offers of cooperation and compensation made by Exclusive Brokers in the RLS, and has paid any applicable fees that are required to participate in the RLS. "Actively" means on a continual and on-going basis during the operation of the Participant's real estate brokerage business. As stated in REBNY's Code of Ethics and Professional Practices (the "Code of Ethics"), the membership requirement shall be applied in a nondiscriminatory manner to all Participants or potential Participants.

S.   "Pocket Listing" shall mean an Exclusive Listing (either sale or rental) withheld from the RLS and selectively co-broked by the Exclusive Agent and/or Exclusive Broker.

T.   "RBD Members" shall mean all Broker A's, and/or any firm(s) with which they are affiliated, who are members of the Residential Brokerage Division of REBNY, and who receive revenues from brokering the sales or rentals of residential property within New York City.

U.   "RLS Staff" shall mean all REBNY personnel that are part of the Residential Brokerage Services Department and/or works with the RLS.

V.   "Seller" shall mean the seller of an Exclusive Property.

W.   "Tenant" shall mean any person who is interested in offering to lease an Exclusive Property.

**ARTICLE I.**

**LISTING PROCEDURES**

Section 1.   Who Can Participate in the RLS.

A.   RBD Members. RBD Members in good standing, and with offices and/or Exclusive Listings within New York City must participate in the RLS and adhere to these

3

Rules and Regulations and the Code of Ethics. All new RBD Members with offices and/or Exclusive Listings within New York City, must, within ninety (90) days of joining REBNY, participate in the RLS, adhere to these Rules and Regulations, the Code of Ethics, and be a Broker A member in REBNY. Additionally, the principal of each RBD Member must complete a REBNY ethics course prior to the firm receiving access to RLS Listing Information.

(i) <u>Mandatory Ethics Training</u>. All new RBD Members must also have all brokers, associate brokers, salespersons, and managers of branch offices affiliated with the firm complete a mandatory REBNY ethics course within ninety (90) days of joining REBNY. Failure to comply with this provision will result in the automatic suspension of access to the RLS for that new firm, until it can demonstrate that all brokers, associate brokers, salespersons and managers of the branch offices have completed a REBNY ethics course.

B. <u>Non-RBD Members</u>. Any other licensed real estate brokerage firm which has: 1) paid all applicable REBNY/RLS fees and dues; and 2) has an office and/or listings in New York City, or is a firm that is actively engaged in a real estate brokerage business in New York City, may also participate in the RLS, and must agree to abide by these Rules and Regulations and the Code of Ethics.

(i) <u>Mandatory Ethics Training</u>. All non-RBD Member firms must have their principal broker(s) complete a mandatory REBNY ethics course prior to the firm receiving access to RLS Listing Information. In addition, all brokers, associate brokers, salespersons, and managers of branch offices affiliated with the firm must complete a mandatory REBNY ethics course within ninety (90) days of joining the RLS. Failure to comply with this provision will result in the automatic suspension of access to the RLS for that new firm until it can demonstrate that all brokers, associate brokers, salespersons, and managers of branch offices have completed a REBNY ethics course.

C. <u>Violations of Section 1</u>. A violation of this Section 1 will be reviewed by a subcommittee comprised of at least five (5) members of the RBD Board of Directors and violations shall be punishable by the imposition of a monetary fine, suspension of access to the RLS, expulsion from the RLS and/or the publication of a statement describing the violation on REBNY's website and/or the filing of a complaint against the offending Participant and/or firm with the Department of State of New York, as set forth in Article VI of these Rules and Regulations.

Section 2. <u>Membership in REBNY</u>. Each real estate broker, associate real estate broker and/or real estate salesperson associated with an RBD Member must become a member of REBNY. Each RBD Member (and their firm) will be notified by February 1st of each year of any delinquent membership payment(s). Each RBD Member must rectify delinquent payment(s) by March 1st of that year. Any new RBD Member who joins REBNY after February 1 of each year shall have thirty (30) days from the date of notice from REBNY of any delinquent membership payments to rectify the delinquency. Failure to rectify any delinquent payments in accordance with this Section 2 will be deemed an immediate violation of these Rules and Regulations and result in termination of that RBD Member's participation in the RLS. Prior to Member will be advised in writing of the intended removal so that the firm may advise its Sellers, Landlords, Buyers, and/or Tenants, as applicable.

A. <u>Current Email Address</u>: All RBD Members and Participants must provide

the RLS with their most current email address for the transmittal of:

      (i)      General communications and news.

      (ii)      Any violations notices for issues relating to the RLS Listings Data Compliance Policy.

      (iii)      The email address(es) for the above communications can be different, but all RBD Members and Participants must identify which person(s) and email address(es) will receive the communications.

      Section 3.      <u>Notification of Missed Payments for Participants that are Not RBD Members</u>. Each Participant who is not an RBD Member will be notified by February 1st of each year of any delinquent payment(s) and will have until March 1st of that year to cure such delinquent payment(s).  Failure to cure such delinquency will terminate Participant's participation in the RLS. When a Participant has been suspended or expelled from the RLS for failing to pay any required penalties, fees or fines, the RLS is not obligated to continue to include that Participant's Exclusive Listings in the RLS.

      Section 4.      <u>Types of Listings on the RLS</u>. The RLS will accept Exclusive Listings, and shall not accept Open Listings, For Sale by Owner Listings or Ours Alone Listings.

      Section 5.      <u>Obligation to Distribute and Timing for Distribution of Exclusive Listings</u>. The Listing Information set forth in Exhibit A for any Exclusive Listing must be disseminated to all other Participants via the RLS: a) simultaneously with any public dissemination of such Exclusive Listing; or b) simultaneously with any showing of the Exclusive Listing to any Buyer, whichever is earlier. Public dissemination includes, but is not limited to, the display of the Exclusive Listing on the Exclusive Broker's public website, any Exclusive Agent's public website, any social media application (including but not limited to Facebook, Instagram, Snapchat, etc.), any third-party website (including but not limited to Zillow, Streeteasy, New York Times, Realtor.com, etc.), or any other public disclosure, promotion or other dissemination of the Listing Information, including but not limited to, disclosing the Exclusive Listing to any Participants outside of the Exclusive Broker's firm.

      A.      <u>Owner Opt-Out from RLS</u>: If an Owner elects to not share their Exclusive Property over the RLS, then the Owner must execute a document (including an Exclusive Listing), which includes language substantially similar to Exhibit B (the "Owner Opt-Out Form"), that an offer of co-brokerage over the RLS and other forms of Public Dissemination, set forth above, should not be initiated with respect to the Exclusive Listing.  The Owner Opt-Out Form must be transmitted to the RLS Staff within forty-eight (48) hours of execution of the Exclusive Listing pertaining to the Exclusive Property, and there can be no Public Dissemination of the Exclusive Property during and following the forty-eight hour period between execution of the Exclusive Listing and submission of the Owner Opt-Out Form to the RLS.  *(Rev 5/21)*

      B.      <u>No Promotion of Pocket Listings</u>: No Exclusive Broker and/or Participant shall promote or encourage an Owner to engage in the practice of Pocket Listing(s). If an Exclusive Broker and/or Participant is suspected of having engaged in a pattern or practice of encouraging Owners to withhold Pocket Listings from the RLS, a complaint by another Participant can be filed against them and a hearing pursuant to Article VI,

Section 2 or 3, as applicable, of these Rules and Regulations shall be convened to decide the merits of the complaint. *(Rev 5/21)*

     C.    <u>No Personal Information</u>. No personal information, such as the Exclusive Agent's name, the Exclusive Agent's contact information or other personal information including URL links to such information can be included in any property description, floorplans, photographs and/or comments for an Exclusive Listing transmitted over the RLS. The Exclusive Agent's name and contact information must appear only in the mandatory fields set forth for such information. *(Rev 5/21)*

     D.    <u>No "Off-Market" Description</u>. Exclusive Listings shall not be described, advertised, and/or promoted by any Participant through public dissemination as "Off-Market," including but not limited to, in the property description or broker notes. *(Added 1/23)*

        (i)    In the event that a Participant describes, advertises, and/or promotes an Open Listing as "off-market," the RLS Staff may request a signed and dated acknowledgement attesting that such listing is an open listing. *(Added 1/23)*

     E.    <u>No Broker Fees in Property Description</u>. Broker fees, including "No Fee", shall not be included in any property description. Broker fees must appear only in the mandatory fields set forth for such information. *(Added 1/23)*

Section 6.    <u>Changes to Exclusive Listings</u>. Any change in the listed price or other change in the original Exclusive Listing, including any change in status, shall be entered into the RLS by the earlier of: 1) simultaneous with any change made over any public website or portal (including, but not limited to, any RBD Member's website); or 2) within twenty-four (24) hours (not including weekends and postal holidays) after the authorized change is received by the Exclusive Agent. Additionally, any transaction involving an Exclusive Listing that has closed should be removed or clearly marked as closed on the Exclusive Broker's website within twenty-four (24) hours after the closing.

Section 7.    <u>Closing Price</u>. The Exclusive Agent must provide the Closing Price of the Exclusive Property for dissemination over the RLS within twenty-four (24) hours of the closing.

Section 8.    <u>Availability for Appointments</u>. Except for Exclusive Properties in Coming Soon status, appointments to visit an Exclusive Property will only be available once the Exclusive Listing is entered into the RLS. The Exclusive Agent can enter approved showing instructions into the RLS. *(Rev 1/23)*

Section 9.    <u>Withdrawal of Exclusive Listings</u>. Exclusive Listings may be withdrawn from the RLS by the Exclusive Agent at the request of any Owner before the expiration date of the Exclusive Listing. If the Exclusive Listing remains displayed publicly, including but not limited to any public website or public portal, then the Exclusive Listing may not be withdrawn from the RLS.

Section 10.    <u>Co-Brokerage Terms for New Developments.</u> New Development Units that are co-brokered over the RLS shall be governed by the terms and conditions set forth in the REBNY Universal New Development Brokerage Agreement ("RUNDBA"), attached hereto as Exhibit D. When inputting a New Development Unit into the RLS, the listing field for "New

Development" should be checked off. For the avoidance of doubt, all brokerage firms participating in the RLS agree to be bound by the terms of the RUNDBA based on their agreement to the use of these Rules and Regulations, of which the RUNDBA is a part and its terms and conditions are incorporated by reference here. Therefore, RLS Members and their respective real estate brokers, associate real estate brokers and salespersons do not have to sign and submit a RUNDBAs for each New Development Unit they may show or visit.

      A.    Submission of Executed RUNDBA to RLS: Before a New Development Unit can be submitted to the RLS, a copy of the RUNDBA executed by the sponsor must be submitted to the RLS Staff. **The copy of the executed RUNDBA must be sent to** RLSSupport@rebny.com. If an executed RUNDBA has already been submitted to the RLS, then no additional RUNDBA is required when releasing new units to the market.

      B.    Incentive Programs Offered by Sponsor/Developer: Any incentive or other program(s) offered by a sponsor to cooperating brokers in connection with a New Development Unit should be inputted by the Exclusive Agent into the listing information for the unit, such as in the "Broker Notes" field or other similar field.

      C.    Updates to New Development Listings: All updates to New Development Units should be made in accordance with Article I, Section 6 of these Rules and Regulations.

      D.    Registration at New Development: Notwithstanding the fact that all brokerage firms participating in the RLS are deemed to have accepted the terms of the RUNDBA, all Participants must still register at a new development or sales office in order for the registration period set forth in the RUNDBA to commence (see, Paragraph 4 of the RUNDBA, Exhibit D).

      E.    Other Applicable Provisions of the UCBA: For the avoidance of doubt, Article I, Sections 7, 8, 9, 11, 12, 13 and 14, as well as all of Articles III, VI, VIII, X and XI of these Rules and Regulations shall also apply to all New Development Units.

      F.    Change of Exclusive Broker for New Development: When the Exclusive Broker for a New Development Unit changes, if the building units will continue to be governed by the RUNDBA the new Exclusive Broker need only execute an "RLS Change of New Development Brokerage/Sales Office Form," (see, Exhibit E), **and submit the executed form to** RLSSupport@rebny.com.

Section 11.    Days On Market Calculation. The calculation of the "days on market" for an Exclusive Listing shall commence on the date that the Exclusive Listing is transmitted by the Exclusive Broker over the RLS to all RLS Participants. The calculation of "days on market" shall be reset to zero (0) should an Exclusive Listing be (a) sold and the transaction has closed; or (b) taken off the market for ninety (90) consecutive days. Exclusive Brokers and/or Exclusive Agents cannot circumvent this Section by attempting to re-name or re-list the Exclusive Listing.

Section 12.    Removal of Listings—Suspended, Expelled or Resigning Participant. The RLS may remove all Exclusive Properties listed by any Exclusive Broker and/or the Exclusive Broker's firm if the Exclusive Broker is suspended, expelled or resigns from either REBNY and/or the RLS. If the Exclusive Broker is suspended from REBNY and/or the RLS because of the failure to pay appropriate dues, fees, or charges, then the RLS is not obligated to provide any services, including continued inclusion of a suspended Exclusive Brokers listings in the RLS

compilation of current listing information. Prior to removal of a suspended Exclusive Broker's Exclusive Properties from the RLS, the suspended Exclusive Broker shall be advised in writing of the intended removal so that the suspended Exclusive Broker's Clients can be advised.

Section 13.   <u>Removal of Listings—Expired/Released Listing</u>. Exclusive Listings transmitted over the RLS will automatically be removed from the compilation of current Exclusive Listings on the expiration date submitted by the Exclusive Broker, unless there is an executed contract of sale or prior to that date the RLS is provided written notice that the Exclusive Listing has been extended or renewed. Similarly, when an Exclusive Listing is released by an Exclusive Broker for any other reason, including but not limited to an Exclusive Agent moving to another participating firm, then upon receipt of a written consent from the prior Exclusive Broker (not the Exclusive Agent), the RLS shall remove the first Exclusive Listing from the current compilation.  *(Rev 5/21)*

Section 14.   <u>Removal of Listings—Failure to Abide by RLS Listings Data Compliance Policy</u>. The RLS reserves the right to remove any Exclusive Listing from the RLS data compilation that fails to meet the requirements of these Rules and Regulations and/or the RLS Listings Data Compliance Policy. Prior to the removal of any Exclusive Listing, both the Exclusive Broker and the Exclusive Agent shall receive notice of the pending removal.

Section 15.   <u>Auction Listings</u>. Exclusive Properties that are to be auctioned (hereafter, an "Auction Listing") may be submitted to the RLS and must be subject to an Exclusive Listing. As set forth more fully below, any Auction Listing submitted to the RLS must include all the terms and conditions of the auction. In addition to other Mandatory Information required under these Rules and Regulations, the Exclusive Broker must also include the following information concerning the Auction Listing:

- The listing price, which shall be the minimum acceptable bid for any purchaser of the Exclusive Property;
- The date, time and location of the auction;
- Any required procedures, if applicable, for Participants who want to register their potential representation of a potential Buyer;
- The time and manner in which any potential Buyer may inspect the Auction Listing;
- Whether a buyer's premium is applicable, and the amount of the buyer's premium;
- Whether the Seller will accept a purchase offer prior to the scheduled auction; and
- Any other rules or procedures governing the auction.

Section 16.   <u>Coming Soon</u>. An Exclusive Broker may designate an Exclusive Property, that is not a New Development Unit or rental unit, as "Coming Soon" for a maximum period of fourteen (14) days from the date of submission to the RLS.   Exclusive Properties that are not New Development Units or rental units may be entered into the RLS as "Coming Soon" subject to the following:

A.  The Exclusive Listing must be submitted to the RLS accompanied with a "REBNY Coming Soon Listing Owner Authorization" Form.  (See Exhibit G)

B.  Exclusive Listings may be in the "Coming Soon" status for a maximum of fourteen (14) days from the date of submission to the RLS.  At the conclusion of the 14-day period, Exclusive Broker shall cause such Exclusive Listing to be designated "Active" in the RLS. If the Exclusive Listing is not ready to be shown after this period, the Exclusive Listing will be required to be moved into the "Temporarily Off-Market" or "Withdrawn" status with the

available date reflected in the Broker Remarks.

C.  While the Exclusive Property is in "Coming Soon" status, neither the Exclusive Broker, the Exclusive Agent, nor the Owner may promote or advertise the Exclusive Property in any manner other than as "Coming Soon". Any advertisement for an Exclusive Property in "Coming Soon" status must display prominently, "Coming Soon. No Showings or Open House until [Start Showing Date]." The prohibition on holding an Open House also applies to an Open House for Participants and other brokers and/or salespersons.

D.  Under no circumstances can an Exclusive Property designated as "Coming Soon" be shown, including but not limited to those Participants (and potential Buyers) affiliated with the Exclusive Broker. The Exclusive Broker may schedule showing appointments while an Exclusive Property is designated "Coming Soon," but cannot show the Exclusive Property until after the "Coming Soon" designation has been removed, and the Exclusive Property is designated "Active" or upon the expiration of such the 14-day "Coming Soon" status, whichever is sooner. Any showing of an Exclusive Property designated as "Coming Soon" will constitute a violation of this Section 16 and will cause the Exclusive Broker to designate the Exclusive Property as "Active" on the RLS.

E.  For any listing designated "Coming Soon," the Exclusive Broker and/or the Exclusive Agent shall only negotiate or make a counteroffer to offers from potential purchasers after the Exclusive Property has been moved to "Active" status on the RLS. It shall be a violation of this Section 16, for an Exclusive Broker and/or Exclusive Agent to facilitate the Owner's acceptance of any offer made on a property designated as "Coming Soon."

F.  A property address or unit may only be designated "Coming Soon" once with the same Owner unless the Exclusive Property has been taken off the market, expired, or cancelled for at least 60 calendar days. (*Added 1/23*)

## ARTICLE II.

## SELLING/LEASING PROCEDURES

Section 1.    Appointments. The Exclusive Agent must respond to requests for appointments promptly. The Exclusive Agent may not deny an appointment to a Co-Broker for any reason whatsoever, with the exception of a previously scheduled appointment or based on the specific instruction of the Owner that does not deny Buyer's/Tenant's right to be represented by a Co-Broker of their choice, or as described more fully in Article II, Section 4, below. (*Rev 5/21*)

A.    Co-Brokers should use best efforts to communicate with an Exclusive Agent that they may be late to an appointment for a showing.

Section 2.    Inducing Cancellation of Appointments. Participants shall not induce anyone to cancel a previously scheduled appointment.

Section 3.    Back-up Brokers. Unless otherwise directed by the Owner, Exclusive Agents shall use best efforts to arrange for at least one back-up broker or salesperson to handle appointments and showing of their Exclusive Listing(s) if they are unavailable or on vacation.

Section 4.    Prior Visits by Buyers. If a person has already visited or been scheduled for an appointment to visit the Exclusive Property, the Exclusive Agent should advise the

scheduling Co-Broker of that fact. Participants must not attempt to persuade a Buyer to revisit an Exclusive Property with them rather than with the original Co-Broker. If a Buyer seeks to visit an Exclusive Property with a new Co-Broker, then the new Co-Broker should obtain a statement in writing from the Buyer stating this fact. This statement should be directed to the Exclusive Agent and the Exclusive Broker.

Section 5.    Buyer's/Tenant's Right to be Represented. All Buyers and/or Tenants have the right to be represented by a Co-Broker, and neither the Exclusive Broker nor the Exclusive Agent can do anything to interfere with Buyer's/Tenant's right to be represented by a Co-Broker.

Section 6.    Recording of Names. Unless otherwise directed by the Buyer, upon request, a Co-Broker must advise the Exclusive Agent of the name of any Buyer represented by the Co-Broker when scheduling an appointment to visit the Exclusive Property. The Exclusive Agent shall record the name of any Buyer, in any list maintained by the Exclusive Agent. If any potential Buyer fails to visit the Exclusive Property after the Buyer's name is recorded, or if the appointment is canceled, the Exclusive Agent shall delete that Buyer's name from its registry.

Section 7.    Communications with Owners. No Participant may contact the Owner regarding a current Exclusive Listing without the Exclusive Agent's prior consent. If an Exclusive Agent leaves the brokerage firm with whom they are affiliated (such firm shall be referred to as the "Former Firm" and Exclusive Agent as the "Former Exclusive Agent"), prior to leaving that firm, the Former Exclusive Agent may advise an Owner that they are leaving the firm. After the Former Exclusive Agent joins another firm participating in the RLS, then the Former Exclusive Agent may not initiate any communication with the Owner regarding a current Exclusive Listing without the Exclusive Broker's prior written consent. For the avoidance of doubt, the Former Exclusive Agent must not in any way interfere with any Exclusive Listing to which their Former Firm is a party. For clarification purposes only, interference shall be deemed to include, but not be limited to, (i) directly or indirectly encouraging any Owner to terminate or breach the terms of any listing agreement between the Owner and the Former Firm, (ii) advertising any property subject to a pre-existing listing agreement with the Former Firm, (iii) disseminating, or attempting to disseminate via the RLS, listing information for any property subject to a pre-existing listing agreement with the Former Firm, or (iv) suggesting, directly or indirectly, that an Owner may unilaterally terminate a valid property listing agreement with Former Firm when the Former Exclusive Agent knows or should know that the subject listing agreement provides no such termination right.

Section 8.    Negotiations with an Owner/Buyer. A Participant may only negotiate directly with the Owner with the full knowledge and consent of the Exclusive Agent. Similarly, an Exclusive Agent may only negotiate directly with a Buyer with the full knowledge and consent of the Co-Broker.

Section 9.    Board Packages. It is the responsibility of the Exclusive Agent to supply the board package requirements and the building financials to the Co-Broker and to assist in obtaining other requested documents, if available. The Co-Broker is responsible for delivering a completed board package to the Exclusive Agent and to provide the Exclusive Agent with a reasonable time to review the completed board package prior to submission to the board of the building. Unless there is a written objection from the Buyer, the Co-Broker must provide the Exclusive Agent with a copy of any board package submitted to the board of the building. The name, firm and phone number of both the Exclusive Agent and the Co-Broker must appear on the cover sheet of the board package submitted to the board of the building. No firm logos or other identifying marks utilized for advertising purposes should appear in the board package.

With respect to Co-Exclusive Listings, each Exclusive Agent should be given a copy of the board package for review prior to submission to the board.

Section 10.    Lease Applications. Any application of a Tenant to lease an Exclusive Property must be reviewed by the Exclusive Agent, and the Co-Broker, if applicable, prior to submission to the Owner. If the Exclusive Property to be leased is a cooperative apartment, condominium unit, or a property which is part of a homeowners association, the application of the Tenant must be reviewed by the Exclusive Agent, and the Co-Broker, if applicable, prior to submission to the cooperative, condominium or homeowner's association.

Section 11.    Disclosure Procedures Among Participants when there are Multiple Bids. If the Exclusive Agent receives multiple offers on the Exclusive Property, the Exclusive Agent shall disclose all offers to the Owner and recommend to the Owner that the Co-Brokers be advised, in a timely manner, of the receipt of multiple offers. When authorized by the Seller, the Exclusive Agent may disclose the dollar amount of competing bids to the Co-Brokers. The Exclusive Agent shall disseminate such information according to the Owner's instructions in a manner consistent with the legal requirement that a broker treat all parties in a fair and trustworthy manner. If the Owner is unwilling to honor a verbally accepted offer when a higher offer is made, the Exclusive Agent should encourage the Owner to allow the first bidder to submit another offer. The Co-Broker should inform the bidder that it is standard practice to show a property up to the point a contract is fully executed and, until then, a binding commitment does not exist. If a Co-Broker believes that his/her offer was not communicated to the Owner, he/she should refer the matter to his/her principal broker, if applicable, to communicate directly with the Exclusive Broker.

Section 12.    Public Open Houses. No Exclusive Agent may deny access to the open house to any other Participant, regardless of whether the Participant is accompanied with or without a Client. Participants may not solicit other Buyers during an open house, including but not limited to soliciting Buyers in the lobby and/or other public areas of the building where the Exclusive Property is located.

Section 13.    Termination of an Exclusive Listing. Provided the Owner consents, the Exclusive Broker shall include language in an Exclusive Listing substantially similar to, but not exceeding, the following:

> Within seven (7) business days after the expiration of the Exclusive Listing, the Exclusive Broker shall deliver to the Owner a list of no more than six (6) names of persons (or related entity) who visited the Exclusive Property during the term of the Exclusive Listing. If within ninety (90) days after the expiration of the Exclusive Listing a sales contract or lease for the Exclusive Property is executed with one of the six persons on the list, the Exclusive Broker shall be entitled to their portion of the commission set forth in the Exclusive Listing. Owner represents and warrants that if a new exclusive listing agreement is executed with another Exclusive Broker (the "New Exclusive Broker"), Owner will notify the New Exclusive Broker of this provision and that the Exclusive Broker may negotiate directly with the Owner with respect to the persons on the list during the ninety (90) day protected period.

Section 14.    Cooperative Co-Exclusive Listing. The names of both the Co-Exclusive

11

Brokers and Co-Exclusive Agents must be included in the Listing Information that is disseminated over the RLS during the term of the Co-Exclusive Listing. Any advertising must include a designation that it is a Co-Exclusive Listing. Unless otherwise directed by the Owner, the Co-Exclusive Agents should promptly notify each other of any discussion with the Owner concerning a reduction in the price of the Exclusive Property. The Co-Exclusive Agents should share with each other the specific names of Co-Brokers and their Clients who have visited or will be visiting the Exclusive Property, should avoid duplicate appointments, and should discuss any offers that have been received on the Exclusive Property.

      A.    Provided the Owner consents and the language similar to that set forth in Section 13 is included in the Exclusive Listing, upon termination of the Co-Exclusive Listing, each Co-Exclusive Broker shall submit a list of names of persons within seven (7) business days to the Owner to be protected for a period not exceeding ninety (90) days, and such list not to exceed six (6) names in the aggregate. Each Co-Exclusive Agent should notify the Co-Broker of any names that have been placed on the submitted list.

Section 15.    <u>Disclosures to Tenants</u>. With respect to the rental of an Exclusive Property, when a Tenant has agreed to pay the commission, the Co-Broker, if applicable, shall inform the Tenant of the potential risk of having to pay more than one commission if the Tenant was shown the property through more than one firm acting as a Co-Broker.

**ARTICLE III.**

**<u>PROHIBITIONS</u>**

Section 1.    <u>Unauthorized Use of Listing Information</u>. Except solely as specified in a separate written agreement between REBNY and a Participant, (a) Listing Information shall not be utilized by Participants other than the purposes provided for in these Rules and Regulations and (b) Participants agree that they will not, in any form, disclose, sell, assign, lease, commercially exploit, or otherwise provide to third parties or cause to be disclosed, sold, assigned, leased, commercially exploited, directly or indirectly, the Listing Information contained in the RLS. Any unauthorized attempt, successful or unsuccessful, to disclose, sell, assign, lease, commercially exploit, or otherwise provide Listing Information to third parties could result in the loss of the ability to participate in the RLS and/or membership in REBNY, if applicable, and a monetary penalty. Any Participant shall promptly notify REBNY if he or she believes that any use by another Participant is inconsistent with the foregoing.

Section 2.    <u>Prohibited Promotional Activities</u>.

      A.    Without the Exclusive Broker's prior written consent, a Participant (and the brokerage firm with which they are affiliated) may not: (i) advertise the Exclusive Property in any way, including but not limited to advertising the Exclusive Property on any third party website; (ii) make any mailing or other mass solicitation promoting the Exclusive Property; (iii) disseminate any information concerning the Exclusive Property to any print, wire, electronic or computer media, publication, listing system, website or service including but not limited to, disclosing the identity of the Seller and/or any Buyer who has, intends to, or will view the Exclusive Property until after the Exclusive Property has been sold and closed; or (iv) participate in any activity that is in violation of 19 N.Y.C.R.R. § 175.25 or any other applicable regulation. Similarly, without the prior written consent of the Co-Broker, the Exclusive Broker may not disseminate to any print,

12

wire, electronic or computer media, publication, listing system, website or service, any information concerning the identity of any Client who has, intends to, or will view the Exclusive Property until after the Exclusive Property has been sold and closed, and even then only to the extent that such information shall enter the public domain.

B.      Nothing contained in this Section shall preclude the dissemination of information concerning the Exclusive Property by each Co-Broker to its real estate brokers, associate real estate brokers, real estate salespersons and employees by such internal dissemination methods as each Co-Broker utilizes in its day-to-day business operations, provided that such internal dissemination is kept confidential and disclosed only to Clients. If such internal dissemination is made by means of computer messages, access to such computer messages may not be available to members of the general public.

C.      When advertising the Exclusive Property of any other participating RLS Member (including, but not limited to, through IDX or a VOW), all such advertising materials must include, in a reasonably prominent location and in a font not smaller than the median type face of the document stating: "Listing Courtesy of [name of the Exclusive Broker/Participant]."

D.      In order to preserve the integrity of the data and information in the RLS database compilation and to help avoid duplicate listings, for the duration of an Exclusive Listing relating to an Exclusive Property, unless the Exclusive Broker (the "Original Firm") withdraws the Exclusive Property from the RLS by submitting an RLS Listing Withdrawal form, then no participating firm or Participant can submit that Exclusive Property to the RLS as their own Exclusive Listing. Once an Exclusive Listing has expired, and assuming that a new Exclusive Listing agreement has been executed by the Owner with another participating firm (the "New Firm"), then the New Exclusive Broker may submit that Exclusive Property to the RLS.

(i)      Additionally, unless an Original Firm withdraws an Exclusive Property from the RLS (using an RLS Listing Withdrawal form), no other Participant shall advertise the Exclusive Property during the term of that Original Firm's Exclusive Listing without the Original Firm's written consent, including but not limited to: any website, third party portal or aggregator, and/or social media account.

(ii)      For the avoidance of doubt, if a New Firm enters into a different Exclusive Listing agreement (such as a rental exclusive, while the property is subject to an exclusive sale agreement with the Original Firm), then the New Firm shall have the right to advertise the property pursuant to its Exclusive Listing, as well as submit it to the RLS.

E.      Assistants Leaving Firms: Assistants who move to new firms and seek to advertise their prior experience are permitted to display only those Exclusive Properties for which the assistant was actually named in the Exclusive Listing or for which they received at least 25% of the commission received by the Exclusive Agent with whom they had previously worked.

Section 3.      Solicitation of Exclusive Listings. During the term of an Exclusive Listing, a Participant who is not a party thereto and/or whose firm is not a party thereto ("Participant B"):

    A.     may not solicit the Owner with respect to the Exclusive Property or do anything to induce the Owner to terminate the current Exclusive Listing so that the Owner will enter into a new Exclusive Listing with the Participant, and the firm with whom the Participant is affiliated; but

    B.     may enter into a separate agreement, such as an Exclusive Listing to lease the Exclusive Property, with the Owner concerning the Exclusive Property where that agreement (the "Second Agreement") covers matters which are not covered by the Exclusive Listing. Before entering into the Second Agreement, Participant B should inform the Owner in writing that by entering into the Second Agreement the Owner could be liable for a commission under both the Exclusive Listing and the Second Agreement.

The term solicit as used in this provision does not include mailings or other multiple solicitations, where it is impractical to distinguish Exclusive Properties that are already subject to Exclusive Listings or instances where the Owner initiates contact with Participant B. If solicited by an Owner who is a party to an Exclusive Listing, Participant B may respond to the Owner's inquiry, but such response cannot affect and/or interfere with the original Exclusive Listing in any way.

    Section 4.    <u>Inaccurate Listing Information</u>. Entries of Listing Information found to have incomplete mandatory items or incorrect data, will be in violation of these Rules and Regulations and/or the RLS Listings Data Compliance Policy (see Exhibit C), and the applicable Exclusive Broker and/or Exclusive Agent shall be subject to any applicable penalties set forth either in these Rules and Regulations and/or in the RLS Listings Data Compliance Policy.

## ARTICLE IV.

## <u>COMPENSATION</u>

    Section 1.    <u>Commissions</u>. With respect to the sale of an Exclusive Property, if a sale is consummated with a Buyer procured by a Co-Broker, unless the Exclusive Listing specifies otherwise or absent some other written agreement between an Owner and their Exclusive Broker(s), the Exclusive Broker and the Co-Broker shall each be paid an equal share of the commission as specified in the Exclusive Listing. Upon reasonable request by RLS staff and within 48 hours of receipt of such request, Participants must provide a copy of the relevant Exclusive Listing or other such written agreement(s) to RLS staff for confidential inspection. The Co-Broker shall be paid their share of the commission only if: (i) a contract of sale is fully executed by the Buyer and the Owner of the Exclusive Property; (ii) the transaction concerning the Exclusive Property is closed pursuant to the fully executed contract of sale; and (iii) the Exclusive Broker has received the commission, unless any of the scenarios below are applicable: *(Rev 1/23)*

    A.    In the event that: (i) a Co-Broker procures a Buyer for an Exclusive Property; (ii) a contract of sale for the Exclusive Property is fully executed by a Buyer and the Owner; (iii) the Buyer defaults; (iv) the Owner retains all or a portion of the down payment given by the Buyer; and (v) the Owner pays the Exclusive Broker a percentage of the down payment retained by the Owner, then, in the absence of any agreement setting forth a different commission split, the Co-Broker shall be paid an equal share of the amount paid by the Owner to the Exclusive Broker.

    B.    In the event that: (i) the Exclusive Property is a unit within a

condominium (the "Unit"); (ii) a Co-Broker procures a Buyer; (iii) a contract of sale for the Unit is fully executed by the Buyer and the Owner; (iv) the Board of Managers (the "Board of Managers") exercises its right of first refusal to purchase the Unit; (v) the contract of sale is terminated; (vi) title to the Unit is passed to the Board of Managers; and (vii) the Exclusive Broker receives a commission payable in accordance with the Exclusive Listing, then, in the absence of any other written agreement setting forth a different commission split, the Co-Broker shall be paid an equal share of the commission as if the Unit had been sold to the Buyer.

C.    With respect to the lease of an Exclusive Property, if the lease is consummated with a Tenant procured by a Co-Broker, unless the Exclusive Listing specifies otherwise or in the absence of any other written agreement between the Exclusive Broker and the Co-Broker, the Exclusive Broker and the Co-Broker shall be paid an equal share of the commission as specified in the Exclusive Listing. If the Owner is paying the commission, then the Co- Broker shall not be entitled to be paid a share of the commission unless: (i) a satisfactory lease is fully executed by the Tenant and the Owner of the Exclusive Property; (ii) all necessary approvals of the lease have been obtained; and (iii) the Exclusive Broker has received the commission payable in accordance with the Exclusive Listing. If the Tenant is paying the commission, then the Exclusive Broker shall not be entitled to be paid a share of the commission unless: (i) a satisfactory lease necessary approvals of the lease have been obtained; and (iii) the Co-Broker has received the commission payable in accordance with any written agreement between the Co-Broker and Tenant. (*Rev 1/23*)

Section 2.    Changes in Commissions After Dissemination Over the RLS.

A.    Negotiations Involving Reductions in Commissions. Any negotiation of the reduction of a brokerage commission must be done with both the Exclusive Broker and the Co-Broker's written approval of the commission reduction. If the Exclusive Broker negotiates a reduced commission with the Owner without the written approval of the Co-Broker, the Exclusive Broker must absorb the full amount of the commission reduction.

B.    Incorrect Commission Information. It is the obligation of the Exclusive Broker and/or the Exclusive Agent to correct any incorrect information disseminated over the RLS relating to the amount of commission to be received by the Co-Broker. If the Exclusive Broker and/or the Exclusive Agent fail to correct the information regarding the commission to be received by the Co-Broker before the earlier of the first showing of the Exclusive Property to the Co-Broker, or the first offer submitted by that Co-Broker (if there has not been a showing), as applicable, the Exclusive Broker must absorb the full amount of the liability relating to the incorrect information.

Section 3.    Referral Fees. Unless the Exclusive Broker and the Co-Broker agree in writing to the contrary, any and all referral fees owed on account of a transaction will be paid by the individual or entity that incurred the liability.

Section 4.    REBNY Does Not Establish Commission Rates. Neither REBNY nor the RLS shall fix, control, recommend, suggest or maintain commission rates or fees for services to be rendered by Participants in the RLS. Furthermore, neither REBNY nor the RLS shall fix, control, recommend, suggest or maintain the division of commissions or fees between cooperating Participants or any other parties.

Section 5.    Costs. If the Exclusive Broker incurs any cost, including, but not limited to attorneys' fees and disbursements, in collecting a commission from the party responsible for its payment, all such costs shall be deducted from the commission received by the Exclusive Broker prior to computing the commission due to a Co-Broker.

Section 6.    Commission Checks and Rent Deposit Checks.

A.    Sales. When possible, the Exclusive Broker should endeavor to have the Owner's attorney issue a separate commission check for any Co-Broker involved in the transaction. When only one commission check is issued, the Exclusive Broker should release the Co-Broker's share of the commission promptly, but no later than five (5) business days after the closing of the transaction concerning the Exclusive Property.

B.    Rentals. In the case of the rental of an Exclusive Property, the Co-Broker shall hold the full brokerage commission and the rent deposit checks until such time as leases have been signed by both the Tenant and the Landlord, unless the Landlord requires the checks for rent and security deposit to accompany the rental application and/or lease. In the case of a cooperative or condominium rental, the Co-Broker shall hold the full brokerage commission and security rent deposit checks until board approval or a waiver is received. Copies of all checks should always be provided to the Exclusive Broker. Any checks shall be in the form of negotiable funds, i.e., certified checks, money orders, cashier's checks, traveler's checks or cash. The Co-Broker shall not accept personal checks or corporate checks without the prior consent of the Exclusive Broker.

Section 7.    Participant Interest in the Exclusive Property. In accordance with Section II(B)(6) of the Code of Ethics, any ownership interest in an Exclusive Property for which the Participant is acting as Exclusive Agent must be disclosed in the Listing Information disseminated through the RLS.

Section 8.    Acquisition of Interest in Exclusive Property. If a Participant seeks to acquire an interest in an Exclusive Property listed by an Exclusive Broker, such interest shall be disclosed, in writing, to the Exclusive Broker no later than the time an offer to purchase is submitted to the Exclusive Broker or Exclusive Agent.

## ARTICLE V.

## FEES AND CHARGES

Section 1.    Establishment of Fees. REBNY and/or the RBD Board of Directors may establish charges/fees (such as RLS fees, fines, and reinstatement fees, etc.) from time to time.

Section 2.    Failure to Pay Fees. Unless otherwise specified in these Rules and Regulations, the failure to pay any fees or charges created under these Rules and Regulations by the due date, and provided that at least ten (10) days' notice has been given, shall result in the suspension of any or all RLS privileges until such fees or charges have been paid in full.

## ARTICLE VI.

## ENFORCEMENT OF RULES AND REGULATIONS

Section 1.     Complaints Generally. The RLS shall give consideration to all signed, written complaints which identify the specific provision(s) of these Rules and Regulations that have been violated by a Participant. Prior to the filing of any written complaint, the complainant must notify the respondent of any alleged violation(s) and conduct good-faith discussions to resolve the alleged violation(s). If the discussions fail to resolve the matter, then complainant may use the form provided by the RLS, or submit an email detailing the required information regarding the alleged violation(s). All complaints filed with the RLS must include either (i) the signature of an RBD Member's Broker A or Broker B, as applicable (or if sent by email, include a Broker A or Broker B as a "cc") or (ii) an acknowledgment from a Broker A or Broker B that they are aware the complaint is being filed and that their firm has complied with the requirement to attempt to resolve the matter through good faith discussions.

A. Evidence Supporting a Complaint. At the time of filing, the complainant must provide the RLS Staff with all evidence in its possession supporting the complaint. A complainant may file supplemental evidence to the RLS Staff should such additional evidence become available after filing and prior to the issuance of a decision on the alleged violation.

B. Confidentiality Generally. If requested, and to the extent possible, the identity of the complaining party will be kept confidential. As set forth below, if a hearing is ultimately requested, the identity of a complainant shall be disclosed. The filing and disposition of complaints and appeals shall be kept confidential among the parties, their firms and the panel except for instances where penalties require disclosure.

Prior dispositions concerning parties involved in a current dispute may be revealed to the parties, their firms and the panel to the extent necessary to assess penalties pursuant to Article XI and Exhibits C and F.

C. Filing of Complaints by RLS Staff. RLS Staff may file complaints relating to violations of these Rules and Regulations against individual Participants but not for RBD Member Firms. RLS Staff do not have the ability to file complaints relating to unethical conduct or violations of the Code of Ethics.

D. Statute of Limitations. All complaints must be filed by the complainant within 90 days from the date that complainant discovered or could have discovered the alleged violation with reasonable diligence.

E. Exclusions. Complaints alleging violations of Article I, Sections 4, 5, 5(A), 5(C), 6, 7, 9, 10, 12, 13, and 14; Article II, Section 14; and Article III, Sections 2(C) and 4 will be processed as Data Compliance violation complaints according to the RLS Listings Data Compliance Policy, annexed here to as Exhibit C.

F. Appeals. With the exception of decisions of a Participant's or RBD Member Firm's suspension or expulsion from the RLS, decisions rendered pursuant to Section 2(A) and Section 3(A) of this Article are final and unappealable.

Section 2.     Complaints Against a Licensed Real Estate Broker, Associate Real Estate Broker, Real Estate Salesperson.

A. Procedures for Filed Complaints. When the RLS Compliance Group receives a complaint, it shall have two (2) business days to review the complaint and determine whether a violation of these Rules and Regulations has occurred. If the RLS Compliance Group concludes that the evidence submitted supports a finding of a violation, they shall issue a Notice of Violation to the violating Participant and Exclusive Broker (or other designated person). If the violation is not corrected within two (2) business days of receipt of the Notice of Violation, then a penalty/fine shall be issued against the violating Participant. If the Participant and/or their Exclusive Broker (or designated person) disputes the violation, they must submit all supporting evidence within two (2) business days of receipt of the original Notice of Violation. The RLS Compliance Group shall then issue a decision on the dispute within three (3) business days of the timely receipt of the supporting evidence from the violating Participant.

   i. <u>Hearing</u>. If a party to the dispute disagrees with the decision of the RLS Compliance Group, within two (2) business days of the issuance of such decision, the party may request a hearing before a committee of three (3) members comprised of members of the RBD Board of Directors and/or qualified Broker A members. Such hearing shall be held within ten (10) business days of the RLS's receipt of a request for a hearing.

Section 3.      <u>Complaints Against an RBD Member Firm</u>. When a complaint is filed against the firm with whom an RBD Member is affiliated (an "RBD Member Firm"), the complaint must state with specificity how the Participant's conduct constitutes a pattern or practice at the RBD Member Firm that violates these Rules and Regulations.

A. Procedures for Filed complaints. When the RLS Compliance Group receives a complaint against an RBD Member Firm, a committee of five (5) members comprised of members of the RBD Board of Directors and/or qualified Broker A members shall hear the complaint ("Committee"). In order for the Committee to find a violation, it must conclude, based on clear evidence, that the brokerage has a "Pattern or practice," which may be shown by a policy or practice at an RBD Member Firm that is part of the standard operating procedure at the firm, or finding of a general and/or regular practice at the RBD Member/Exclusive Broker that amounts to an improper policy.

Section 4.      <u>Complaints by RLS Staff</u>. Complaints filed by RLS Staff will be processed according to the sections set forth above. Furthermore, no REBNY or RLS Staff person may be present for any of the deliberations of the RLS Violations Subcommittee involving a complaint covered by Section 3(A), or participate in the drafting of any decision by the RLS Violations Subcommittee regarding such a complaint.

Section 5.      <u>Violations of Board Code of Ethics</u>. With respect to an alleged violation of the Code of Ethics, such complaint, grievance, and/or dispute shall be referred to the Residential Ethics Committee and shall be processed and resolved in accordance with Article XII of the REBNY Constitution.

Section 6.      <u>Violations of these Rules and Regulations/RLS Listings Data Compliance</u>

Policy. The failure to submit Listing Information in accordance with any RLS data requirements, including but not limited to any of the listings data requirements set forth in these Rules and Regulations and/or the RLS Listings Data Compliance Policy, shall be processed and resolved in accordance with the RLS Listings Data Compliance Policy, attached hereto as Exhibit C. As set forth more fully in the RLS Listings Data Compliance Policy, the Exclusive Agent and/or the Exclusive Broker must take appropriate measures to correct any violation of the RLS Listings Data Compliance Policy within three (3) business days of receipt of a notice of violation. As set forth in Article I, Section 14, the RLS reserves the right to remove from the RLS any Exclusive Listing that is not in compliance with the RLS Listings Data Compliance Policy.

## ARTICLE VII.

## ARBITRATION

Section 1.    Mandatory Arbitration of Disputes. All monetary disputes arising under these Rules and Regulations, including but not limited to a claim for a commission between firms participating in the RLS relating to an Exclusive Listing, must be submitted to binding arbitration conducted under the arbitration procedures of REBNY ("REBNY Arbitration"). Accordingly, any claim involving a Broker A, Broker B and/or Principal Broker which relates to a commission arising from an Exclusive Listing must first be arbitrated at REBNY prior to any of the parties seeking relief in another forum against another party, such as an Owner, Purchaser, Landlord or Tenant. Failure to submit to a REBNY Arbitration as provided in this Section 1 shall be a violation of these rules, and subject to potential punishment as set forth in Article XII of the REBNY Constitution; expulsion from the RLS; and a penalty of up to $10,000.00. This provision shall be deemed an arbitration agreement pursuant to New York state law. Nothing in this provision shall be construed to prevent or limit, in any way, a Participant's right to exercise a legal remedy outside of the REBNY Arbitration process against any party with whom such Participant has a direct contractual relationship (separate from these Rules and Regulations) concerning compensation for a particular transaction.

A.    Hearing for Failure to Submit to REBNY Arbitration: Any Broker A, Broker B or any Principal Broker who files a complaint that any other Participant in the RLS has failed to submit a monetary dispute to REBNY Arbitration, must also serve the complaint on the party who is the subject of the complaint. A hearing by a five (5)-person panel comprised of members of the Residential Ethics Subcommittee of the REBNY Ethics and Professional Practices Committee shall decide the merits of the complaint. The panel shall cause a notice to be sent to the parties involved setting forth the date and time of the hearing, which shall be conducted no later than five (5) business days from the date of service of such notice, and shall be conducted in accordance with Article XII of the REBNY Constitution.

(i)    Filing Suit After Losing a REBNY Arbitration: If any Broker A, Broker B, or Principal Broker (the "Losing Broker") loses a REBNY Arbitration and then files suit in a court against any non-party to the arbitration seeking a commission arising from the transaction that was the subject of the arbitration, then the prevailing Broker A, Broker B, or Principal Broker (the "Prevailing Broker") may file an Ethics Complaint against the Losing Broker, and the same procedures set forth in Section 1(a) shall be followed. Nothing in this provision shall in any way impair or preclude a Losing Broker from filing a proceeding seeking to overturn a REBNY Arbitration award pursuant to CPLR § 7511(b)

19

(corruption, fraud, or misconduct in procuring the award; partiality of the arbitrators; the arbitrators exceeding their power; and/or failure to follow Article 75 of the CPLR).

## ARTICLE VIII.

### <u>CONFIDENTIALITY OF RLS INFORMATION</u>

Section 1.     <u>Confidentiality of RLS Information</u>. Any information provided in the RLS to Participants shall be considered official information of the RLS. Such information shall be considered confident

Section 2.     <u>Use and Protection of RLS Information</u>. Participants may not disclose and shall use independent best efforts to protect the confidentiality of restricted fields, names, and addresses included in the RLS; provided, however, the Exclusive Broker and/or the Co-Broker may use information relating to an Exclusive Property in advertising their services if approved in writing by the Buyer/Tenant and Owner and if such information is maintained and compiled apart from the RLS.  Similarly, an Exclusive Broker and/or Exclusive Agent may advertise any of their own active Exclusive Listings. Participants agree to use their best efforts to protect the confidentiality of their passwords and to prevent unauthorized access to the RLS. Additionally, Participants may utilize current Listing Information, information regarding "comparables," or any other publicly available information to support an estimate of value on a particular Exclusive Property for a particular Owner, for appraisal purposes, and any other services reasonably related to the day-to-day business activities of a licensed real estate brokerage firm.

Section 3.     <u>Provision of RLS Information to Buyers and/or Owners</u>. Participants may provide potential Buyers/Tenants and Owners with a reasonable number of individual records (or portion of individual records) relating to Exclusive Properties which the Buyer/Tenant or Owner has a bona fide interest in purchasing, renting, selling, or leasing, as applicable. The term "reasonable," as used herein, should therefore be construed to permit only limited reproduction of individual records (or portion of individual records) intended to facilitate the decision-making process in the consideration of a potential transaction. Factors which shall be considered in deciding whether the reproductions made are consistent with this intent, and thus "reasonable" in number, shall include, but are not limited to, the total number of listings in the RLS, how closely the types of Exclusive Listings conform with the Buyer/Tenant's or Owner's expressed desires and ability to purchase, rent, sell or lease; whether the reproductions were made on a selective basis; and whether the number of records provided is consistent with a reasonable itinerary of Exclusive Properties which would be shown to the Buyer/Tenant, or a reasonable number of records provided to an Owner to determine a sale or lease price.

Section 4.     <u>No Reproduction of RLS Information</u>. Except as otherwise expressly provided herein or in a written agreement between REBNY/RLS and a Participant, the contents of the RLS, or any information, including statistical information, derived from the RLS, may not, in whole or in part, be reproduced, copied, disseminated, sublicensed, transferred, assigned, entered into a computer database, used as part of or in connection with a mailing list, or otherwise utilized, in any form or manner or by any means, except for the Participant's individual, personal, and confidential reference. Notwithstanding the foregoing an Exclusive Broker, Exclusive Agent and/or Participant may make statistical information derived from the contents of the RLS available to prospective Buyers/Tenants, and/or Owners in connection with the marketing of the Exclusive Broker and/or Participant's brokerage services. However, any print or non-print forms of advertising or other forms of public representations based in whole or

in part on information supplied by the RLS must clearly demonstrate the period of time over which such information is based and must include the following, or substantially similar, notice:

> "Based on information from the REBNY Listing Service for the period (date) through (date). The REBNY Listing Service makes no representations or warranties with respect to the accuracy or completeness of such information and shall not be held liable for any omission or inaccuracy of such information thereof."

## ARTICLE IX.

## AMENDMENTS

Section 1.    Amendment of Rules and Regulations. The powers to alter, amend, or repeal these Rules and Regulations is vested in the RBD Board of Directors, subject to review and approval by the Board of Governors of REBNY.

## ARTICLE X.

## OWNERSHIP

Section 1.    Ownership of Exclusive Listings. By the act of submitting any Exclusive Listing to the RLS, the Exclusive Broker represents and warrants that he or she owns all right, title and interest in the Exclusive Listing, has obtained necessary consents to comply with these Rules and Regulations, if any, from any third-party to any materials included in such Exclusive Listing, and is authorized to grant, and thereby does grant, the RLS (and its service providers and licensees) an irrevocable, worldwide, paid-up, royalty-free, right and license to include the Exclusive Listing in the RLS, including but not limited to, any statistical report or comparables, the creation of any copyrighted RLS compilation and to use it and authorize its use for any purpose consistent with the facilitation of the sale, lease and valuation of real property or such other use.

Section 2.    Ownership of RLS Compilations. All rights, title and interest in each copy of every RLS Compilation created and copyrighted by the RLS and/or REBNY, shall at all times remain vested in the RLS and/or REBNY, as applicable. As used here, an RLS Compilation shall be construed to include any format in which Listing Information is collected and disseminated to the Participants, including but not limited to bound book, computer data-base or any other format.

## ARTICLE XI.

## PENALTIES FOR VIOLATIONS OF RULES AND REGULATIONS

Section 1. Penalties. The following penalties shall be imposed and may be appealed pursuant to the procedures set forth herein. All fines shall be made payable to the RLS. Should a Participant fail to pay any fine or penalty assessed to them, then the Exclusive Broker or RBD Member Firm with which the Participant is affiliated shall be responsible for the payment of any penalties issued pursuant to any violation of these Rules and Regulations by that Participant.

A. Penalties for violations described in Article VI, Section 2 are as follows:

(i)    First Offense – a fine of $500.00.

(ii)    Second Offense within any twelve (12) month period – a fine up to $2,000.

(iii)    Third Offense within any twelve (12) month period – a fine up to $10,000 and notice of the offense shall be posted on REBNY's website.

(iv)    Fourth Offense within any twelve (12) month period – Participant shall be suspended from, and not have access to, the RLS for a period up to thirty (30) days, notice of the fourth offense shall be posted on REBNY's website, and/or any additional fine. Any further violation after the fourth offense within a twelve (12) month period by any Participant may cause the Participant to be subject to expulsion from the RLS and/or REBNY.

i.    Any Participant providing access to, or any information from, the RLS to a Participant whose access is suspended or revoked pursuant to this Article shall be deemed providing Unauthorized Use of the Listing Information pursuant to Article III, Section 1 and subject to the penalties proscribed therein.

(v)    If such penalties are not paid within sixty (60) days of notice to the Participant, the Exclusive Broker shall be notified (a "RLS Procedures Violation Notice") and either the Participant and/or the Exclusive Broker shall have thirty (30) days to make such payment. Failure to make payment within fifteen (15) days of receipt of an RLS Procedures Violation Notice shall result in suspension of that Participant's access to the RLS, and any additional punishment as determined by the Violations Subcommittee. Failure to make payment within thirty (30) days of receipt of an RLS Procedures Violation Notice may subject the Participant to expulsion from the RLS and/or REBNY.

B.    Penalties for violations described in Article VI, Section 3. A committee empaneled pursuant to Article VI, Section 3(A) shall have the discretion to impose penalties for violations described in Article VI, Section 3. The penalties may include but are not limited to, monetary fines, notification to regulators of irregular business practices, censure and where repeated violations have been substantiated, suspension and/or expulsion from the RLS. In determining the appropriate penalty, the committee shall take into consideration the harm caused to the complainant, the RLS community, and the larger real estate industry, including clients.

C.    Unauthorized Use. REBNY, the RLS, RBD Members, Exclusive Brokers and all Participants agree that it may be difficult to quantify damages in connection with any breach of these Rules and Regulations and that because damages may not fully compensate REBNY/RLS for its losses in connection with a breach of these terms and conditions, REBNY/RLS may obtain injunctive relief to prevent the breach of any of these terms and conditions, and may obtain such injunctive relief without posting a bond.

D.    Duty to Correct and Cooperate. Except for any violations of the RLS Listings Data Compliance Policy, any RBD Member whose firm is found to have violated any of the Rules and Regulations must take appropriate measures to correct any such violation within two (2) business days of the ruling issued by any panel convened

two (2) business day period set forth here may subject the RBD Member/Exclusive Broker (and if applicable, Exclusive Agent) to further punishment under these Rules and Regulations, including but not limited to expulsion from the RLS.

Section 2.      Notice of Penalties. The Participant, and the RBD Member with whom they are affiliated, involved with any violation of these Rules and Regulations shall receive notice of all penalties, fines, and/or punishments issued in connection with such violation. Where a penalty is based upon cumulative violations, Participant must have received actual notice of prior violation(s) and penalt(ies). The sending of an email to the email address provided by the Participant shall be deemed proper notice.

Section 3.      Appeal of Suspension or Expulsion from the RLS. An appeal of the penalty of suspension or expulsion of a RBD Member Firm's or a Participant's access to the RLS may be filed with a designated RLS Staff person within five (5) business days after the receipt of written notification suspending that Firm's and Participant's access to the RLS. (See Exhibit F.)

## ARTICLE XII.

## **INDEMNIFICATION**

Section 1.      No Representation or Warranty. REBNY and the RLS make no representation or warranty, whether explicit or implied, with respect to the completeness, inaccuracy, or misrepresentation of any information contained in the RLS. In no event shall REBNY, the RLS, or any associated organization be held liable by a Participant, Seller, Landlord, Owner, Buyer or Tenant for any incompleteness, inaccuracy, misrepresentation, or other mistake in any information contained in the RLS. The sole remedy or recourse for any damages arising from such mistakes in information shall be against the Exclusive Broker or Exclusive Agent who listed such information. Each Exclusive Agent, and the Exclusive Broker, shall indemnify and hold REBNY, the RLS, the RBD, and each of their respective licensees, harmless against any and all loss, cost, expense or liability, including, without limitation, attorneys' fees and disbursements, arising from any claim brought against REBNY, the RLS, the RBD and/or each of their respective licensees arising from, arising out of or relating to the incompleteness, inaccuracy or other mistake in any Listing Information, including but not limited to the display of any photographs or other media, transmitted over the RLS or through the syndication program operated by REBNY and the RLS.

Section 2.      Extent of Liability of Exclusive Broker. The Exclusive Broker shall have no liability to any Co-Broker or to any Buyer or Tenant procured by the Co-Broker for: (i) any act, error, omission, misrepresentation or default by the Owner of the Exclusive Property, (ii) any prior sale or lease of the Exclusive Property, or (iii) the withdrawal of the Exclusive Property from the sale or rental market by the Owner, as applicable.

Section 3.      Indemnification by Co-Broker. If a sale or lease of the Exclusive Property is consummated with a Buyer or Tenant procured by a Co-Broker, such Co-Broker shall indemnify and hold the Exclusive Broker and the Owner of the Exclusive Property harmless against any and all loss, cost, expense or liability, including, without limitation, attorneys' fees and disbursements, arising from any other broker or salesperson claiming to have dealt with the Co-Broker or the Buyer or Tenant in connection with the Exclusive Property. Any liability under this indemnification shall be limited to the amount of any commission received by the Co-Broker pursuant to the Exclusive Listing.

## **EXHIBIT A**

## **MANDATORY INFORMATION TO BE CONTAINED IN EXCLUSIVE LISTINGS TO BE TRANSMITTED OVER THE RLS[1]**

**Unless otherwise specified, exclusive Listing must be disseminated via the RLS and transmitted to all other Participants in the RLS simultaneously with any public dissemination of such Exclusive Listing. (See Article I, Section 5)**

### **Listing Information**

Board Approval Required (Y/N)
Borough
Co-Broke Agreement Type (for New
    Developments or RUNDBA)
Co-Broker's Commission
Exclusive Agent(s)
Exclusive Agent(s) E-mail Address
Exclusive Agent(s) Telephone Number
Exclusive Firm
Exclusive Listing Expiration Date (Hidden
    Field)
First Showing Date (needs to be defaulted to
    the date the listing is entered)
Showing Instructions
IDX Entire Listing Display (Y/N)
Listing Date
Listing Status

Listing Type (Co-Exclusive, etc...)
Listing URL
Number of Bathrooms
Number of Baths Full
Number of Baths Half
Number of Bedrooms
Number of Rooms
Open House(s)
Price
Sort Order (Photo Sort Order)
Unit Number
Syndication (Y/N)

### **Condo/Coop Information:**

Apartment Number
Flip Tax
Maintenance or Common Charges
Percent of Common Elements

Max Financing
New Development (Y/N)
Ownership Type (Condo/Co-op/Condop)
Washer/Dryer Allowed Y/N

### **Townhouse Information:**

Garage
Number of Units
Property Width
Townhouse Block & Lot
Total Legal Rooms

---

[1] This list is not exhaustive and may, from time to time, change. Please be sure to check the RLS regularly for the most up-to-date mandatory information fields.

**Rental:**
Available Date/Time
Commission for Rentals
Commission Type (Collect Your Own
Fee/Owner Pays/Co-broke)
New Development (Y/N)
Furnished Rent Price
Furnished/Un-Furnished (Min / Max Leased
Months)

Lease Term
Owner Pays
Free Rent
Bonus
Concessions
Washer Dyer Allowed Y/N
Pet Policy

**Building Information:**
Building Ownership / Type
Block & Lot
County
Elevator
Garage (Y/N)
Lobby Attendant (FT; PT or Y/N)
Number of Floors
Number of Units
City
State
Street Name

Street Number
Street Suffix
Borough
Neighborhood
Sub-let Policy for Building (Y/N)
Zip Code
Pet Policy

**After Contract Signed:**
Contract Date
Contract Signed Status

**After Closing / Lease Signed:**
Closing Price (See Definition D) or Rental Price
Sold or Leased Date

**As set forth in Article I, Section 5, no personal information, such as the Exclusive Agent's
name, the Exclusive Agent's contact information or other personal information including
URL links to such information can be included in any property description, floorplans,
photographs, comments and/or Internet remarks regarding the Exclusive Listing; the
Exclusive Agent's name and contact information must appear only in the mandatory
fields set forth for such information.** *(Rev 5/21)*

**EXHIBIT B**

**DRAFT RLS Owner Opt-Out Form (Article I, Section 5)** *(Rev 5/21)*

[insert Date of Letter]

REBNY Listing Service
570 Lexington Avenue
New York, New York 10018
Attn: RLS Staff

To the RLS Staff:

I, [insert Owner's Name], have elected to not share my Exclusive Property (address below) with other firms participating in the REBNY Listing Service ("RLS").  As discussed with my Exclusive Broker/Agent, I understand that  my Exclusive Broker/Agent is prohibited from displaying the Exclusive Property on its website, various third party real estate websites, and social media applications as described in the RLS Universal Co-Brokerage Agreement ("UCBA").

I have had thorough discussions with my Exclusive Broker/Agent regarding this decision.  Based on those discussions, I understand and acknowledge that by not sharing my Exclusive Property with other brokers through the RLS, the level of exposure that my Exclusive Property receives may be affected, which may ultimately affect both the number of offers made for my Exclusive Property and/or the price at which it is sold or rented.  I further understand and acknowledge that by electing to not have my Exclusive Property be displayed as described above , then both real estate brokers and consumers who conduct searches for property listings on the Internet may  not see information about my Exclusive Property.  I also understand and acknowledge that, if I have selected to not have my Exclusive Property shared over the RLS to other participating brokerage firms, then it may take longer to sell or rent my Exclusive Property than if it had been shared with other brokers participating in the RLS.

_____

**Signature of Owner**

**Address of the Exclusive Property**
**[insert the address here – be sure**
**to include unit #]**
**[include Agent name and**
**Brokerage]**

**Important Instructions for Exclusive Brokers:**

**1)      Original of this document must be sent to the RLS,** RLScompliance@rebny.com **within forty-eight (48) hours of the execution of the Exclusive Listing Agreement is executed. (See Article I, Section 5).**

**2.      The Exclusive Broker should retain a copy of this document for its files.**

**EXHIBIT C**

**RLS LISTINGS DATA COMPLIANCE POLICY**



## RLS LISTING DATA COMPLIANCE POLICY

January 2023

## 1.    Introduction and Policy Statement

Submission of high-quality listing data to the RLS is vital to the RLS brokerage community and consumers of RLS Listing Content. Listing Information must always be both accurate and current, and should be entered correctly at the time the Exclusive Listing is executed. Accordingly, the RLS has implemented this listing data compliance policy that will help to ensure the accuracy and quality of the listing information in the RLS.

The various violations and fines set forth here are subject to change by the REBNY Board of Directors. Furthermore, this listing data compliance policy is in addition to, and does not in any way replace, the other provisions of the RLS Universal Co-Brokerage Agreement/Rules and Regulations (the "UCBA").

This policy sets forth the RLS data compliance requirements, the potential fines and violation procedures and other information regarding the RLS. Indeed, it is the responsibility of all Exclusive Agents and Exclusive Brokers to ensure that data concerning their Exclusive Listings is input accurately and maintained throughout the life of the Exclusive Listing. Having accurate data will also improve the syndication process to all third-party portals.

All capitalized terms not defined here shall have the same meaning as in the UCBA.

## 2.    Definitions

### 2.1.    Listing Content

Includes, but is not limited to, photographs, images, graphics, audio and video recordings, virtual tours, drawings, descriptions, remarks, narratives, pricing information, and other details or information related to listed property.

### 2.2.    Duplicate Listing

Active listing submitted multiple times with the same building, address and/or unit number.

### 2.3.    Mandatory Fields

Those fields set forth in Exhibit A to the Universal Co-Brokerage Agreement/Rules and Regulations.

## 3.    Scope

This policy applies to all RLS Participants (Exclusive Brokers and Exclusive Agents). Failure to follow the requirements of this policy and the UCBA may result in fines and/or suspension of access to the RLS.

## 4.      RLS Listing Data

### 4.1.      Accurate Listing Content

All Exclusive Listings entered into the RLS must include all Mandatory Fields and adhere to all other RLS data standards. Listings submitted to the RLS shall contain all disseminated information related to listing property.

### 4.2.      Timely Dissemination of Updates to Listing Content

Listing Content must be disseminated to all other Participants via the RLS in accordance with the terms and conditions of Article I, Section 5 of the UCBA.

In the event of any change to the Listing Content, information must be updated: 1) simultaneous with any change made over any public website or portal (including, but not limited to, any RBD Member's website); or 2) within twenty-four (24) hours (not including weekends and postal holidays) after the authorized change is received by the Exclusive Agent.

### 4.3      Listing Data Violation and Fines

Any Listing Information submitted to the RLS that fails to meet the requirements set forth in the UCBA and/or this Policy must be corrected in accordance with this Policy, and may result in the imposition of a fine and/or other penalty. Any fine imposed on an Exclusive Agent/Exclusive Broker must be paid within the timeframe(s) set forth in this Policy (and on any Violation Notice issued by the RLS).  Failure to pay any fine in accordance with this Policy will result in increased fines and/or termination of access to the RLS.

The Exclusive Broker shall reassign the Exclusive Listing associated with any Exclusive Agent whose access to the RLS is either terminated and/or suspended because of any failure to comply with this Policy, including but not limited to the non-payment of any fines imposed on the Exclusive Agent. Suspended or terminated Exclusive Agents will not have the ability to either update, modify and remove any current listing on the RLS, nor will they have the ability to input any new Exclusive Listings to the RLS. The Member whose access is terminated will not be able to update, remove or post any new listings until the listing data is corrected and payment of all applicable fines are paid.

4.3.1 Discretion of RLS Compliance Staff. The RLS Compliance Staff shall have the ability to either waive or revoke a fine, violation or penalty imposed under this Policy if in the RLS Compliance Staff's reasonable discretion, compelling evidence has been provided by the Participant that:  1) no violation has occurred, 2) neither the Participant nor the firm with whom they are affiliated are responsible for the alleged violation, or 3) can demonstrate good cause as to why no fine, violation or penalty should be imposed.  *(Rev 11/20)*

4.3.2 Appeal to the RLS Board of Directors.  Determinations by the RLS Compliance Staff may be appealed to a three-person subcommittee of the RLS Board of Directors.  The appellate panel may overturn the decision of the RLS Compliance Staff only if the Participant and the Exclusive Broker with whom the Participant is affiliated can show that the violation could not be corrected because of extraordinary circumstances, such as a medical emergency.  *(Rev 6/21)*

**4.4     Failure to Correct a Violation**

4.4.1    Failure to correct a violation within the applicable correction period may also subject a non-conforming listing to removal by the RLS from active display. New violations may be issued for any remaining uncorrected violations.

4.4.2    Violation Type and Associated Fines:

[Continued on next page]

**FOR SALES TRANSACTIONS**

| Violation type | Violation description | Days to correct and / or pay fine | Fine amount(s) |
|---|---|---|---|
| Fair Housing Act and/or NYC Human Rights Law, Title 8 | Listing description that includes words and/or phrases that violates the aforementioned Federal and State Laws | 1st Notification - Two (2) business days | $250.00 |
| | | 2nd Notification - Termination of RLS access | $500.00 |
| UCBA and/or Listing Data Quality Policy | Data contained in listings that are non-compliant with RLS requirements | 1st Notification - Three (3) business days | $0 |
| | | 2nd Notification - Two (2) business days | $250.00 |
| | | 3rd Notification - One (1) business day | $250.00 |
| | | 4th Notification - Termination of RLS access | No additional fine |

**FOR RENTAL TRANSACTIONS**

| Violation type | Violation description | Days to correct and / or pay fine | Fine amount(s) |
|---|---|---|---|
| Fair Housing Act and/or NYC Human Rights Law, Title 8 | Listing description that includes words and/or phrases that violates the aforementioned Federal and State Laws | 1st Notification - Two (2) business days | $250.00 |
| | | 2nd Notification - Termination of RLS access | $500.00 |
| UCBA and/or Listing Data Quality Policy | Data contained in listings that are non-compliant with RLS requirements | 1st Notification - Three (3) business days | $0 |
| | | 2nd Notification - Two (2) business days | $250.00 |
| | | 3rd Notification - One (1) business day | $250.00 |
| | | 4th Notification - Termination of RLS access | No additional fine. |

**4.3    Quarterly Reviews for Firms: The RLS will perform four (4) quarterly reviews per year. If a participating brokerage firm has more than 5% of the listings it submits to the RLS during any given quarter rejected and/or with data compliance violation(s), the RLS shall impose a monetary fine of $10,000.00 against the participating firm. Such fine must be paid within three (3) days of the imposition of the fine.**

A. If a participating firm is fined three times in a calendar year (i.e., more than 5% of listings submitted are rejected and/or not in compliance for 3 quarters of that year), the RLS shall recommend to REBNY that the participating firm be suspended from the RLS for a period of thirty (30) days, after which the firm can apply for reinstatement to the RLS, and must demonstrate to the satisfaction of the RLS the measures and procedures it has implemented to prevent future non-compliance.

**4.4     Waiver of Violations**

All violations and fines will be waived if notice of the violation occurs more than one hundred eighty (180) days after the listing has been sold, canceled or expired.

**Please direct all questions regarding this policy to RLScompliance@rebny.com.**

## EXHIBIT D

### REBNY UNIVERSAL NEW DEVELOPMENT BROKERAGE AGREEMENT

**The Real Estate Board of New York - © copyright 2021**

**THIS REBNY UNIVERSAL NEW DEVELOPMENT BROKERAGE AGREEMENT** (this "Agreement") is made as of the ___ day of _____ 20__, by and between _____ ("Owner"), having an office at _____, and _____ having an office at _____ ("Outside Broker").

### W I T N E S E T H:

**WHEREAS:**

A. Owner is the sponsor of the Offering Plan, dated _____, and as may be amended from time to time ("Plan"), for the property located at _____ _____, New York _____ ("Property");

B. Owner desires to offer for sale certain residential units in the Property ("Units"; each, a "Unit") pursuant to the terms of the Plan (and any and all amendments thereto) as accepted for filing by the New York State Department of Law ("Department of Law") and the terms of agreements between any potential purchasers and Owner for the sale of Units at the Property, including but not limited to either option and/or purchase agreements (collectively, "Purchase Agreements");

C. _____ ("Exclusive Sales Agent"), having an office at _____, has been appointed by Owner as Owner's exclusive sales agent under the Plan;

**NOW, THEREFORE**, in consideration of the mutual promises and covenants herein contained, Owner and Outside Broker hereby agree as follows:

1. <u>Representations of Outside Broker</u>. Outside Broker represents to Owner (for the benefit of both Owner and Exclusive Sales Agent) that:

(a) Outside Broker is a real estate broker duly licensed in the State of New York and all persons affiliated with Outside Broker in the sale of real estate are real estate brokers or salespersons duly licensed in the State of New York, and that to the extent now or hereafter required by applicable laws or regulations, Outside Broker has or will provide upon request the Department of Law with proof of its compliance with Article 12-A of the New York Real Property Law licensing requirements, including placing on file with the Department of Law a copy of the real estate broker or salesperson license issued by the New York State Department of State. Outside Broker and its brokers and salespersons shall maintain such licenses in good standing throughout the term of this Agreement; and

(b) Outside Broker is authorized to act as a real estate broker and to market the Units to prospective purchasers (each, a "Prospect") and agrees that each Unit to be listed for sale is offered subject to the Plan (and any and all amendments thereto) and to errors, omissions, changes in price or terms, withdrawal at any time, and prior sale.

2. <u>Compensation</u>.

(a) In connection with the prospective sales of Units to Prospects solely procured by Outside Broker (and any co-broker of Outside Broker, if applicable), and subject to all other conditions

contained in this Agreement, Outside Broker agrees to accept a brokerage commission ("Commission") equal to _____ (__ %) percent of the Net Purchase Price (as such term is defined in Paragraph 2(d) below) for each Unit.  Owner shall have the right to change the amount of the Commission payable to Outside Broker with respect to one or more Units at any time by written notice to Outside Broker; provided, however, that any such notice shall not affect the amount of the Commission, or other incentive program, payable to Outside Broker with respect to a sale of a Unit to a Prospect who has submitted a Purchase Agreement or other written offer signed by Prospect, and received by Owner prior to Outside Broker's receipt of Owner's notice.

(b)     The Commission shall be deemed earned by Outside Broker and due and payable by Owner to Outside Broker only if, as and when (i) a Purchase Agreement satisfactory in all respects to Owner, in its sole judgment, is fully executed by a Prospect and Owner, it being agreed that Owner shall have the absolute right to accept or reject any Prospect without explanation and without liability to Outside Broker; and (ii) such Purchase Agreement is consummated and the agreed upon purchase price, less any discounts agreed to by Owner, is paid to and accepted by Owner at the closing of the sale of the Unit ("Closing").  It is further understood and agreed that: (x) if, for any reason whatsoever, a Purchase Agreement shall not be entered into between Owner and a Prospect, or (y) if a Purchase Agreement shall be entered into, but shall not be consummated for any reason whatsoever, including, but not limited to, Owner's default, it being expressly understood that the closing of the sale of the Unit is an absolute condition to any liability for any Commission, then, and in either such event, no Commission or compensation of any kind shall be due, earned or payable to Outside Broker and Outside Broker hereby releases Owner and the Exclusive Sales Agent and any and all other Indemnified Parties (as such term is defined in Paragraph 11 below) from any and all claims whatsoever, including for a Commission or other compensation in connection with the relevant Prospect.  Commissions, if due, shall be paid at the Closing.  No portion of the Commission shall be payable until Outside Broker shall have delivered to Owner a bill for the payment of the same, unless otherwise agreed to by Owner.

(c)     In addition to the foregoing, Outside Broker acknowledges and agrees that Outside Broker shall not be entitled to any Commission with respect to a particular Unit should any of the following events arise or apply to a transaction involving such Unit:

(i) the Plan is abandoned or withdrawn, for any reason whatsoever, in accordance with its terms (or otherwise as may be permitted by law);

(ii) the sale is not procured solely by Outside Broker (and its co-broker, if applicable) or Outside Broker is not instrumental in bringing about the sale;

(iii) the Prospect (either directly or through a broker) has previously registered at the Property with Owner or the Exclusive Sales Agent, as determined by Owner or Exclusive Sales Agent, in their discretion;

(iv) the Prospect is an agent, employee or family member of Outside Broker or its brokers, salespersons or any co-broker, or a family member of an agent or employee of Outside Broker or its brokers, salespersons or any co-broker, unless otherwise agreed to by Owner;

(v) (A) Outside Broker fails to register the Prospect, in writing, in accordance with Paragraph 4 below, with the Exclusive Sales Agent before introducing the Prospect to the Property, (B) Outside Broker and the applicable broker or salesperson of Outside Broker are not listed on the Property's sign-in sheet (the "Sign-in Sheet") filled out by the Prospect, or (C) the Prospect indicates on the Sign-in Sheet that they are not working with a broker;

(vi) Outside Broker has otherwise failed to comply with the provisions of Paragraph 3 hereof;

(vii) Outside Broker registers the Prospect in accordance with Paragraph 4 below, and it is subsequently discovered prior to execution by Prospect of a Purchase Agreement, as determined by Owner and/or Exclusive Sales Agent in its sole discretion, that such Prospect had previously registered with a different broker;

(viii) Outside Broker has not accompanied the Prospect on the Prospect's first visit to the sales office for the Property (such location, or any other location designated by Owner or Exclusive Sales Agent, to be referred to herein as the "Sales Office"), unless (A) at such first visit the Prospect has designated Outside Broker as its broker on the Sign-in Sheet, (B) Outside Broker has accompanied the Prospect on the Prospect's second visit to the Sales Office, if any, and (C) this Agreement has been fully executed and delivered prior to or simultaneously with Prospect's first visit to the Property, or prior to or simultaneously with the acceptance by Owner of a written offer to purchase from a Prospect represented by Outside Broker;

(ix) the Prospect has not visited the Sales Office prior to submitting a written offer or signed Purchase Agreement for the Unit, unless same was submitted to Owner or Exclusive Sales Agent by Outside Broker on behalf of the Prospect;

(x) a party related in some way to Prospect, including but not limited to a familial relative, co-purchaser, guarantor, or other related party, has previously registered in accordance with Paragraph 4 below with a different broker;

(xi) Exclusive Sales Agent has received a letter from a Prospect (a) stating that Prospect reasonably believes they have been abandoned by Outside Broker; or (b) Prospect reasonably believes that they have not been effectively represented by Outside Broker, and provides the basis for such belief;

(xii) a Purchase Agreement for a Unit is not signed and submitted by a Prospect within sixty (60) days after such Prospect was most recently registered by Outside Broker, in accordance with Paragraph 4 below; or

(xiii) the Purchase Agreement includes a representation or statement by the Prospect that it dealt with a broker other than Outside Broker, Exclusive Sales Agent and any co-broker of Outside Broker.

Outside Broker understands and agrees that Outside Broker may be required to provide an affidavit to establish proof regarding any assertion by Outside Broker with respect to the above provisions.  In addition, in the event of any dispute between Outside Broker and another broker claiming a right to the Commission to be paid pursuant to a transaction on a specific Unit, Owner shall have the right to deposit the Commission into an escrow account maintained by the Real Estate Board of New York, Inc., which shall then hold the Commission until resolution of the dispute between the opposing brokers.

(d)      The computation of the Commission to be paid to Outside Broker (and co-broker, if any, acting with the Outside Broker) in the event of a sale shall be based solely upon the Net Purchase Price of the Unit or Units.  For purposes of this Agreement, "Net Purchase Price" means the price set forth in the Purchase Agreement, provided, however:

(i) any amounts specifically identified as credits on the final closing statement and/or the amount of any concessions or purchaser incentives paid by or credited by the Owner in lieu of a reduction in the purchase price in order to effectuate execution of the Purchase Agreement and close of title to the Unit shall be deducted from the Net Purchase Price;

(ii) any extra charge for special work or special items ordered and paid for by Prospect shall not be added on to the Net Purchase Price; and/or

(iii) any credits or deductions given after execution of the Purchase Agreement relating to the condition of the Unit shall not be deducted from the Net Purchase Price.

The Net Purchase Price of a Unit as provided in the preceding sentence shall include the actual purchase price paid by such Prospect for any storage, parking or other facility offered for sale or license by Owner at the Project that is purchased or licensed by such Prospect.

3.  Appointments.

(a)  Outside Broker agrees that Outside Broker or its broker or salesperson shall telephone or e-mail Exclusive Sales Agent (at the Sales Office) and arrange in advance a confirmed appointment during Exclusive Sales Agent's business hours at the Sales Office ("Sales Office Hours") and Outside Broker further agrees that Outside Broker or its broker or salesperson shall use its best efforts to accompany the Prospect on any appointment, subject to Paragraph 2(c)(viii) above.

(b)  Outside Broker hereby understands and acknowledges that access to the Property will be granted only at Owner's sole discretion, and may be limited or restricted due to construction activity.  Any such request for access shall require reasonable advance notice, and such access, if granted, will be during Sales Office hours.  If requested by Owner, prior to gaining access to the Property, all parties shall sign a waiver prepared by Owner.

4.  Registration.

(a)  In the event Outside Broker attempts to introduce a Prospect to the Property, Outside Broker shall register in writing at the Sales Office, such registration to include:  (i) Outside Broker's name and the name of the applicable broker or salesperson of Outside Broker, (ii) the name, address, and phone number of the Prospect, and (iii) the date and time of any on-site visit.  Outside Broker will comply with the registration procedures Exclusive Sales Agent establishes from time to time.  Outside Broker acknowledges that any registration is valid for an initial period of sixty (60) days only, but shall be extended for additional sixty (60) day-periods after the occurrence of any of the following events:

(i) A visit to the Sales Office by the Prospect or the Outside Broker at the request of the Prospect;

(ii) Acceptance by Owner or Exclusive Sales Agent, on behalf of Owner, of an offer to purchase by Prospect; or

(iii) Issuance   of   a   Purchase   Agreement   by   Owner   to   Prospect.

(b)  In the event Outside Broker arranges a confirmed appointment with respect to a Prospect in accordance with Paragraph 3, such Prospect shall be deemed to be registered as of the date

such appointment is arranged, provided that such the Prospect appears for the appointment and that at such appointment Outside Broker complies with the provisions of Paragraph 4(a) set forth above.

5.     Change of Exclusive Sales Agent:  Owner may change the Exclusive Sales Agent listed in connection with this Agreement by executing a "REBNY LISTING SERVICE CHANGE OF NEW DEVELOPMENT BROKERAGE/SALES OFFICE FORM" form and submitting such form to REBNY's designated representative.  For the avoidance of doubt, Owner is not required to execute a new Agreement each time an Exclusive Sales Agent for the Property may change.

6.     Unit Presentations.  Exclusive Sales Agent will conduct all Unit presentations to all Prospects.  Outside Broker acknowledges that Exclusive Sales Agent and its sales staff have been specifically trained to understand and present the features of the Property and its Units on behalf of Owner.

7.     Withdrawal of a Unit; Owner's Discretion.  Owner reserves the right to elect in its sole discretion to withdraw any Unit from the market before or after the submission of an offer, and where multiple offers exist on a Unit, to elect at its sole discretion which, if any, to accept.

8.     Purchase Agreement.  No Purchase Agreement shall be deemed binding or effective for any purposes until countersigned by Owner and no Prospect shall have any right with respect to any Unit unless and until Owner, in its sole discretion, shall countersign such Purchase Agreement and accept the deposit made thereunder and return one original counterpart of the Purchase Agreement to the Prospect or such Prospect's attorney.

9.     Confirmation Letter.

(a)     Prior to Owner entering into a Purchase Agreement with a Prospect procured by Outside Broker or by a co-broker acting with Outside Broker, Outside Broker and any such co-broker shall, if Owner has so requested in writing, represent to Owner in writing that, to the best of their knowledge, Outside Broker and any such co-broker are the sole brokers responsible for procuring such Prospect.

(b)     The right to receive payment of any Commission due to Outside Broker may be conditioned upon the delivery by Outside Broker to Owner at or prior to Closing (if Owner has requested the same in writing at or prior to the Closing) of a letter confirming that, to the best of its knowledge, Outside Broker is the sole broker (other than the Exclusive Sales Agent or any co-broker who worked with Outside Broker) with respect to any sale of the Unit(s) for which such Commission is claimed by Outside Broker.

10.     Co-Brokers of Outside Broker.

(a)     In the event Outside Broker engages a co-broker in the sale of a Unit, no more than one Commission in the aggregate shall be payable by Owner.

(b)     Outside Broker agrees that any Commission may, at Owner's option, be paid either to Outside Broker or by check to the order of Outside Broker and its co-broker jointly.

(c)     This Agreement shall not be deemed the engagement by Owner of any co-broker with whom Outside Broker may engage.  Neither Exclusive Sales Agent nor Owner shall have any obligation (i) with respect to any co-brokerage agreement that exists or may exist between Outside

Broker and another party, including, without limitation, the obligation to pay any commission due thereunder, or (ii) to determine if any such co-brokerage agreement exists.

      (d)    Unless Outside Broker shall have the right pursuant to a separate agreement, the fact that Outside Broker shall have dealt with any co-broker in the showing of a Unit to any Prospect shall not give Outside Broker any right to compensation which may be paid by Owner to the co-broker for procuring any other transaction involving any other Prospect.

      11.    <u>Indemnification by Outside Broker</u>.  Outside Broker agrees, to the fullest extent of the law, to indemnify, defend (with counsel reasonably approved by Owner) and hold harmless Owner and Exclusive Sales Agent and each of their respective agents, members, principals, officers, directors, employees, successors and assigns, ("<u>Indemnified Parties</u>") from and against all costs, damages, claims, suits, actions, proceedings, fines, penalties, judgments, amounts paid in settlement and expenses, including reasonable attorneys' fees and disbursements arising out of or resulting from:  (i) any claim of any other person or entity for brokerage fees, commissions or compensation based upon any dealings with Outside Broker and/or the Prospect in connection with the Unit; (ii) willful misconduct or gross negligence on the part of Outside Broker or any of its brokers, salespersons, staff or agents and acts of Outside Broker outside the scope of Outside Broker's duties under this Agreement or Outside Broker's failure to conform to this Agreement; (iii) claims for salaries or other compensation of personnel employed or retained as sales or brokerage agents by Outside Broker; and (iv) any misrepresentations regarding the Plan, the Property and/or the Units made by Outside Broker or any of its employees except to the extent made in reliance on information or materials provided to Outside Broker by any Indemnified Parties. The extent of Outside Broker's indemnification liability set forth in this <u>Paragraph 11</u> shall be limited with respect to any Unit to the amount of the Commission paid or payable to Outside Broker, or the amount that would have been payable, if applicable, in connection with the sale of the underlying Unit transaction giving rise to the claim, provided, however, that such indemnification shall not be limited with respect to any claim arising from conduct covered by <u>Paragraph 11(ii)</u>. In the event of termination of this Agreement under <u>Paragraph 16</u>, Outside Broker's obligations under the indemnities given hereunder shall survive such termination.

      12.    <u>Fiduciary Duty of Outside Broker</u>.

      (a)    Outside Broker acknowledges that Owner has entered into an agreement with Exclusive Sales Agent pursuant to which Exclusive Sales Agent has been given the right as selling agent under the Plan to sell Units.  Outside Broker shall, subject to <u>Paragraph 12(b)</u> below, cooperate with Exclusive Sales Agent in facilitating sales of Units.

      (b)    Owner acknowledges that, notwithstanding <u>Paragraph 12(a)</u> above, Outside Broker (including any broker of Exclusive Sales Agent that is acting as an Outside Broker) shall represent the Prospect, not Owner or Exclusive Sales Agent, in the sale of any Unit.  Owner accepts and understands that Outside Broker's fiduciary duty to the Prospect may conflict with the interests of Owner or Exclusive Sales Agent and that such duty takes priority over any fiduciary duty owed by Outside Broker to Owner or to Exclusive Sales Agent pursuant to this Agreement.

      13.    <u>Independent Contractor</u>.  It is understood that Outside Broker is an independent contractor and shall not be considered the agent of Owner or Exclusive Sales Agent for any purpose whatsoever, and Outside Broker is not granted any right or authority to assume or create any obligation or liability or make any representation, warranty or agreement (express or implied) on behalf of Owner or Exclusive Sales Agent or to bind Exclusive Sales Agent or Owner in any manner whatsoever.

14.    Expenses.

(a)    Outside Broker shall be solely responsible for any expenses Outside Broker incurs in soliciting, procuring and consummating Unit sales (including, but not limited to, co-brokerage fees or Commissions to its brokers, salespersons or co-brokers, advertising expenses, overhead, and personnel) and neither Exclusive Sales Agent nor Owner shall be obligated to pay or reimburse Outside Broker for any such expenses.

(b)    Neither Owner nor Exclusive Sales Agent is authorized or empowered to incur any expenses on Outside Broker's behalf, to offset any of Owner's or Exclusive Sales Agent's selling expenses against Commissions due Outside Broker hereunder, or to enforce any Commission claims on Outside Broker's behalf.

15.    Information and Advertising.

(a)    If Owner shall advise Outside Broker that certain information is confidential, Outside Broker shall hold such information (other than as already disclosed in public marketing materials) received by it with respect to the Plan, Property, any Unit or any Prospect, in confidence, subject to any legal or ethical obligation that may require Outside Broker to disclose such information.

(b)    Information pertaining to the Property and the Units or any transaction relating thereto shall not be released by Outside Broker to any newspaper, magazine, website, radio or television station or other publicly accessible medium.

(c)    Outside Broker shall not advertise the Units in any way, in print or electronically or on the internet, or make any other advertisement or public statement with respect to the Plan, the Property or the Units, nor shall Outside Broker make use of any written material, "set ups," or descriptions, except for selling brochures and other material furnished to Outside Broker by Exclusive Sales Agent. Such brochures and other material furnished by Exclusive Sales Agent may only be used as expressly permitted in writing by Exclusive Sales Agent or Owner.

(d)    A breach by Outside Broker or any of it brokers or salespersons or any co-broker of any of the provisions of this Paragraph 15 shall constitute a material breach of this Agreement.

16.    Termination.  This Agreement may be terminated by Owner without cause upon fifteen (15) days' prior written notice or immediately upon written notice to Outside Broker of any material breach of the terms of this Agreement. This Agreement shall terminate automatically three (3) years from the date it is countersigned by Owner, unless terminated earlier in writing by either party. In the event of termination of this Agreement, all of Outside Broker's rights under this Agreement shall terminate on the date of such termination, except as otherwise expressly provided herein. Notwithstanding the previous sentence, subsequent to termination of this Agreement, Outside Broker shall retain the right to  receive a Commission (i) with respect to Prospects registered in accordance with Paragraph 4 of this Agreement prior to termination, and (ii) provided that all other conditions to Outside Broker's entitlement to a Commission with respect to a specific Unit as set forth in this Agreement are satisfied, except that in the case of termination for material breach no Commission shall be payable in connection with any transaction involving the material breach committed by Outside Broker.

17.    Communications.  Any and all communications between Outside Broker and Owner regarding the Property and the Units must be made through Exclusive Sales Agent.

18.   <u>Further Covenants</u>.

(a)   Outside Broker represents and agrees that Outside Broker will offer the Units strictly in accordance with the provisions of the Plan and applicable law, and that no statement, promise, warranty or representation may be made by Outside Broker except as specifically set forth and described in the Plan.

(b)   Outside Broker acknowledges that it is responsible for the actions of all of its brokers, salespersons and any co-brokers working with Outside Broker and will ensure their compliance with the terms of this Agreement and with applicable law.

(c)   Outside Broker acknowledges that neither Outside Broker nor any of its brokers or salespersons nor any co-broker will attend any "punch list" inspections of a Unit scheduled in connection with the Closing for such Unit, or attend the Closing for such Unit, without the prior written consent of Owner.

19.   <u>Dispute Resolution</u>.  All disputes relating to Commissions under this Agreement shall be resolved by binding arbitration under the auspices of the Real Estate Board of New York Inc., pursuant to its rules and regulations, and any disputed Commission shall be placed in escrow pending the outcome of such arbitration, and the parties agree to submit to and be bound by such arbitration.  In the event any other dispute arises out of this Agreement hereunder, the parties hereto agree to enforce the terms and provisions of this Agreement in Supreme Court of the State of New York in New York County or the federal court in the Southern District of New York, this being in addition to any other remedy to which they are entitled at law or in equity.  In addition, each of the parties hereto consents to submit itself to the personal jurisdiction of the federal court located in the Southern District of New York or any New York State Supreme Court in New York County.

20.   <u>Notices</u>.  Any and all notices, elections, demands, requests, consents and responses thereto permitted or required to be given under this Agreement shall be in writing, signed by the party giving the same, and shall be deemed to have been properly given and shall be deemed effective upon receipt (i) if personally delivered, or (ii) if delivered by a reputable overnight courier, with receipt confirmed, to the other party at the address of such other party set forth below or at such other address as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith.  Each party authorizes routine communications between the parties to be given by fax, email, or other electronic communication.  Personal delivery to a party or to any officer, partner, agent or employee of such party at such address shall constitute receipt.  Rejection or other refusal to accept or inability to deliver because of change of address of which no notice has been received shall constitute receipt.  Any such notice, election, demand, request or response shall be addressed as follows:

(i)   To Owner:

_____
_____
_____
_____

with a copy to Owner's attorney at:

_____

_____
_____
_____

and a copy to Exclusive Sales Agent at:

_____
_____
_____
_____

     (ii)     To Outside Broker:

_____
_____
_____
_____

21.    <u>Designated Party</u>.  Either Owner or Outside Broker may designate (by providing notice to the other party hereto) a representative authorized to act on its behalf with respect to this Agreement.

22.    <u>Authority</u>.  The individuals executing this Agreement on behalf of each of Owner and Outside Broker represent that they are authorized to do so.

23.    <u>No Waiver</u>.  No waiver of or consent to any breach of any condition, covenant or agreement contained in this Agreement shall be construed to be a waiver of any subsequent breach thereof or of this Agreement.

24.    <u>Severability</u>.  The illegality or invalidity of any provision of this Agreement shall not affect the validity of the remaining provisions hereof.

25.    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of, and be enforceable by, Owner, its successors and assigns.

26.    <u>Assignment</u>.  None of this Agreement, the obligations of Outside Broker or any payments due Outside Broker may be assigned by Outside Broker without Owner's prior written consent and any such attempted assignment shall be void and of no force or effect.  Notwithstanding the foregoing, Outside Broker may, without Owner's prior consent, assign its interest in, to and under this Agreement to any entity which is controlled by Outside Broker, or any successor to Outside Broker by purchase, merger, consolidation, recapitalization or otherwise.  For purposes of this paragraph, "control" shall be deemed to mean ownership or voting control, directly or indirectly, of not less than fifty (50%) percent of the voting stock, partnership interests or other beneficial interests of such entity.

27.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York applicable to agreements made and to be performed wholly in the State of New York, without regard to principles of conflicts of law.  The parties hereto acknowledge and agree that, except as otherwise expressly set forth in <u>Paragraph 19</u>, disputes arising out of this Agreement will be subject to the jurisdiction of the courts of New York and the parties hereby waive any right to protest or otherwise remove such jurisdiction.

28.     Legal Fees.   In the event a dispute arises between the parties and any litigation, arbitration or other proceeding is commenced to enforce the provisions of this Agreement, the prevailing party in litigation, arbitration or proceeding shall be entitled to seek, claim and receive from the non-prevailing party reasonable attorneys' fees and disbursements, including court costs through all appeals, incurred by the prevailing party with respect thereto, unless otherwise determined by the arbitrators.

29.     Entire Agreement.   This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and any other agreements, whether oral or written, heretofore entered into between the parties hereto with respect to the sale of Units are hereby canceled and of no further force or effect.

30.     Modifications.   The provisions of this Agreement may not be modified except by an agreement in writing between and signed by the parties hereto.

31.     Counterparts.   This Agreement may be executed in any number of counterparts, including PDF, each of which shall constitute an original, but all of which, taken together, shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

**OUTSIDE BROKER [Non-RLS Participant][2]:**

By: _____
    Name:
    Title:
    Company Name:

**OWNER:**

By: _____
    Name:
    Title:

---

[2] Only Non-RLS Participant brokers need to execute the agreement.

## EXHIBIT E

## REBNY LISTING SERVICE CHANGE OF NEW DEVELOPMENT BROKERAGE/SALES OFFICE FORM

**This form should be submitted by any RLS brokerage firm that shall be replacing another current RLS brokerage firm in connection with the representation of a New Development Building or New Development Unit, if:**

- **The New Development Building is currently submitting listings to the RLS;**

- **The Owner of the New Development intends to utilize the co-brokerage contract for outside brokers that is currently in place (either the REBNY Universal New Development Brokerage Agreement or a current agreement that has been grandfathered in by the Universal Co-Brokerage Agreement); and**

- **The brokerage firm being replaced is also an RLS participant.**

**Upon completion, please send a pdf of the fully executed form to RLSSupport@rebny.com**

**Name of New Development:** _____

**Address of New Development:** _____

_____

_____

**Name of New Exclusive Broker:** _____

- **Name of Head of Sales Office/Exclusive Agent(s)** :_____

_____

- **Address of Sales Office If Different from Above:** _____

_____

_____

- **Email Contact for Sales Office:** _____

- **Telephone Number:** _____

**Type of Co-Brokerage Contract
Currently Utilized by
New Development:** _____

**Name of Prior Exclusive Broker:** _____

- **Name of Prior Head of Sales
  Office/Exclusive Agent(s):** _____

# **EXHIBIT F**

## **RLS APPEALS PROCESS**

I.    <u>The Appellate Panel</u>

When a party appeals the penalty of suspension or expulsion, a committee of five (5), non-conflicted members drawn from the Residential Board of Directors and the RLS Board of Directors (the "Appellate Panel") shall hear the appeal at a live hearing.

II.    <u>Scope of the Hearing</u>

The Appellate Panel's scope of inquiry and review will be limited to whether the penalty of suspension or expulsion from the RLS is an appropriate sanction for violations to the Universal Co-Brokerage Agreement ("UCBA"). In reviewing the penalty, the Appellate Panel shall take into consideration the harm caused to the complainant, the RLS community, and the larger real estate industry, including clients. In the case where the penalty is reversed, the Appellate Panel may determine and impose an alternative penalty to the party. The determination of the Appellate Panel to suspend or expel a party from the RLS shall be final and binding unless the party facing such penalty, within five (5) days of such determination, make an application for the Board of Governors to review such determination as set forth below.

III.    <u>Submissions Prior to the Hearing</u>

The party facing suspension or expulsion must submit a writing to the Appellate Panel clearly articulating the basis of the appeal and why the penalty is not warranted. The submission shall be simultaneously served upon the party's adversar(ies) from prior determinations. Said adversar(ies) may submit to the Panel response(s) opposing such an appeal, articulating why the penalty is appropriate.

IV.    <u>Parties at the Hearing</u>

The party facing suspension or expulsion must present any relevant arguments and/or evidence supporting an appeal of suspension or expulsion. The party's adversary(ies) from prior determinations may present any relevant arguments and/or evidence opposing the appeal of suspension or expulsion.

V.    <u>Review by Board of Governors</u>

Upon the timely request by the party facing suspension or expulsion as outlined in Paragraph II above, the Chair of the Board of Governors shall appoint a Review Panel of not less than three (3) Governors to review the Appellate Panel's determination and hear the request at a live hearing. The Review Panel shall be afforded the parties' submissions referenced in Paragraph III above and may make any other requests of the parties to assist in its determination. In reviewing the penalty, the Review Panel shall take into consideration the harm caused to the complainant,

the RLS community, and the larger real estate industry, including clients. The determination of the Review Panel shall be final and binding.

VI.     Effect of Suspension or Revocation

The party subject to penalty will have its access to the RLS suspended and/or revoked upon ten (10) business days written notice from REBNY.

## EXHIBIT G - COMING SOON OWNER AUTHORIZATION[1]

Exclusive Property Address: _____

Owner of the Exclusive Property listed above authorizes the Exclusive Broker to place this property in the "Coming Soon" Status of the REBNY RLS in accordance with, and subject to, the rules and regulations of the Universal Co-Brokerage Agreement.

Owner affirms that the Exclusive Property is being prepared for sale and marketing in an "Active" Status on the Showing Start Date of: _____ (less than or equal to 14 calendar days after the Owner signs the exclusive listing agreement and this authorization form, whichever is sooner). Owner further acknowledges that the "Coming Soon" Status is a vehicle for RLS Participants to notify other Participants of properties that will become available for showing and purchase after preparations are completed.

While the Exclusive Property is in "Coming Soon" Status, Owner and Exclusive Broker agree that:

1. The Exclusive Property must have a "Showing Start Date" entered in the RLS, less than or equal to (14) calendar days after it has been entered as "Coming Soon" on the RLS.
   a.     The Exclusive Listing must become "Active" on the Showing Start Date. If the property is not ready on the Showing Start Date, the property must be either designated "Temporary Off-Market" or "Withdrawn" in the RLS until it is ready for showings.
   b.     The Showing Start Date cannot be changed.
   c.     Days on Market calculations begin when the listing moves to an "Active" status.
   d.     A property address or unit may only be allowed in the "Coming Soon" Status one time with the same Owner unless the Exclusive Property has been off-market (expired or cancelled) for at least 60 calendar days.

2.   If it is the practice to use signs, a Broker may place a sign at the property during the "Coming Soon" period (for up to 14 calendar days) ONLY if it is entered in the RLS in the "Coming Soon" Status. The sign must prominently display "Coming Soon".

3.   During the "Coming Soon" designation period, the Exclusive Property shall not be shown under any circumstances including, but not limited to Open Houses and broker tours during the "Coming Soon" Status.

4.   Negotiations of and counteroffers to offers may only be commenced by Owner after the Exclusive Property has been moved to "Active" status.

Owner _____          Date _____

Signature _____

Exclusive Broker _____          Date _____
Signature _____

---

[1]  This form must be submitted along with either the Listing Agreement paperwork to the RLS within (3) business days of the listing date or entry into the RLS as Coming Soon if it was previously being withheld.